JONES, sheriff, &c. and others *vs.* BRADNER and others.

Where merchants residing in the city of New-York receive an order for goods from persons residing at a distance, no particular directions being given as to the manner in which the goods shall be forwarded, and the vendors proceed to select the goods ordered, and a portion of them, after being packed in boxes are placed on board a vessel, for transportation, the cartman taking from the master of the vessel receipts for each load, no person except the shipper is entitled to a bill of lading. And if the shipper is also the holder of the receipts, he may direct to whom the bill of lading shall be made out; or in other words, to whom the goods shall be deliverable. And until he does so, the right of possession remains in himself.

Accordingly, where goods were thus placed on board a vessel, for transportation to the purchasers' place of residence, and receipted for by the master; *Held* that there was not such a delivery to the purchasers as rendered the goods liable to be taken by virtue of an attachment issued against the property of the purchasers on the ground of their being non-resident debtors.

ERROR to the superior court of the city of New-York. Riley & Walker, of Milton, Florida, sent an order to the plaintiffs, who were merchants in the city of New-York, by mail, for goods. The order did not direct any mode in which the goods were to be sent. The plaintiffs below commenced selecting the goods mentioned in the order, and having selected a part were proceeding to select the residue, about $250 or $300 worth. That part of the goods which had been selected, was packed, filling seven boxes and four bales. These seven boxes and four bales were sent by plaintiffs' cartman on the 19th of September, to the brig Republic, lying at the dock in East river, and two receipts taken for them in the name of the plaintiffs below. No bill of lading had yet been taken or executed. No invoices had yet been sent to Riley & Walker. The original invoices remained in the plaintiffs' hands, yet to be completed by adding the remainder of the goods. On the same day, 19th of September, the defendant Jones, sheriff, by virtue of an attachment sued out by the defendant Palmer, took these goods from on board the ship, at Palmer's direction. On the 20th, the next

day, in the morning, the said receipts were presented, and a bill of lading demanded in the name of the shipper, which was refused.

The plaintiffs below in this suit replevied the goods. On the trial of the replevin suit, in the superior court, it was proved to be the custom in New-York for the shipper of goods to take, as the loads were delivered to the ship, receipts in his own name, and upon surrendering these receipts to have made out, and to take, a bill of lading, making the goods deliverable to the holder of the receipts, or to whomsoever the holder of the receipt might direct. The judge charged the jury that Riley & Walker, against whom the attachment issued, did not, by any sufficient delivery, or otherwise, acquire any such a right to, or interest in the goods attached, as to subject the same, as respected the plaintiffs, to attachment as against the plaintiffs, by creditors of said Riley & Walker, for any debt or demand against them, and that the defendant, Palmer, was not enabled or authorized to proceed against the same by attachment, and the sheriff acquired no right or title thereby as against the plaintiffs, Bradner & Co. The jury found a verdict for the plaintiffs for six cents damages and six cents costs, and assessed the value of the goods at $2,072,19. And the defendants brought a writ of error.

*N. B. Blunt*, for the plaintiff Jones. I. The delivery to Riley & Walker of the goods attached was complete. (*Russ* v. *Minett*, 11 *East*, 210. *People* v. *Haynes*, 14 *Wend.* 546.) The testimony of Newcombe, the invoice dated September 18, and the letter of Bradner & Co. of September 20, expose the pretended right to retake set up by the plaintiffs below, as an after thought. The goods, when attached, were at the risk of Riley & Walker, and destruction by act of God would have been their loss. II. There was no right of stoppage *in transitu.* The attempted proof of insolvency of Riley & Walker failed. (*Kinlock* v. *Craig*, 8 *T. R.* 119. *Newson* v. *Thornton*, 6 *East*, 17.) III. At least, the plaintiffs were bound to have de-

Jones *v.* Bradner.

manded the goods, and the action should have been in the *detinet*. (*Barrett* v. *Warren*, 3 *Hill*, 348.)

At all events, the title to the goods was in Riley & Walker until the plaintiffs below signified their intention to retake them. The defendants below were not trespassers.

*E. Terry*, for the plaintiff Palmer.　I. The whole question in this case is, who did the goods belong to? And there is nothing in this case to take it out of the operation of the well established principles of law, that, on such a state of facts, the sale of the goods became complete, and the goods became the property of the purchasers. And there was a complete delivery, complete for all purposes, unless the vendors could show some reason for taking them back. (*The People* v. *Haynes*, 14 *Wend.* 546,) In *Lift* v. *Cowley*, (7 *Taunt.* 169,) Gibbs, C. J., said, "it has never been doubted but that the goods vested in the vendees as soon as they left the original owner's possession; but it has always been equally certain, that the owner might retake them in their passage, if he had subsequent grounds for believing that the purchaser would not perform his part of the contract by paying for them." Delivery of goods to a carrier or master of a vessel, when they are to be sent by a carrier, or by water, is equivalent to a delivery to the purchaser, and the property, with the correspondent risk, immediately vests in the purchaser. (2 *Kent's Com.* 499.) The rule is the same, if the goods are put on board a general ship, for the consignee. (2 *Kent's Com.* 499. *Coxe* v. *Harden*, 4 *East. Rep.* 211. *Brown* v. *Hodgson*, 2 *Campb. Rep.* 36. *Groning* v. *Meedham*, 5 *M. & Sel.* 189.) The fact that *all the articles* ordered were not selected, makes no difference. They might not have been able to be obtained. "But where the vendor has made such selection, and appropriated some specific portion of the entire bulk, for the benefit of the vendee, the property in the article sold passes to the vendee, although the vendor is not bound to part with the possession, until he is paid the price." (*Chitty on Cont.* ed. 1844, *p.* 337. *Clarke* v. *Spence*, 4 *Adol. & Ellis*, 469.) The exercise of the right of stoppage, in this

case, affirmed the title of the vendee, and unless insolvency was shown, the vendor could not take them. (14 *Wend.* 565.) "It is a contradiction in terms," says Justice Buller, "to say a man has lien on his own goods, or has a right to stop his own goods *in transitu.*" Therefore the goods could not have been the plaintiffs', as they sought to stop them *in transitu.* (14 *Wend.* 565, 566.) The judge, at the trial, should have excluded the testimony about the custom, altogether, it being purely a question of law, whether the title to the goods had passed or not. If the defendants had not been surprised with evidence of custom, they could have shown, what every day takes place, that all insurance companies make no distinction between receipts and bills of lading, as respects paying losses. All the testimony which was given, was merely the *opinions* of the witnesses as to what was the law. It amounted to nothing more.

II. All was done, in any event, which was to be done, in respect to the change of the title in the goods, so far as third parties were concerned. Third parties have a right to consider goods, after a change of possession from the vendor to the vendee, the property of the vendee, according to our statutes. If any thing more was to be done, it was a matter between the sellers and purchasers, and must have been for the benefit of the purchasers and not of the sellers. The goods could have been sold without the consent of the sellers, and an assignment of them for the benefit of creditors would have passed the property. (1 *R. S. 3d ed.* 195, 6, §§ 5, 6.) III. The right of stoppage *in transitu* did not exist, because, there was in fact no insolvency of the vendees, and none is set up or pretended; on the contrary, the only evidence on the subject is to the contrary. To entitle a vendor to *stoppage in transitu,* there must be an *insolvency* of the vendee occurring subsequent to the sale of the goods. In such cases *only* has the right been exercised. (*Nicholls* v. *LeFeuvre,* 2 *Bing. N. C.* 81. *James* v. *Griffin,* 1 *M. & Wels.* 20. *Coates* v. *Railton,* 6 *B. & C.* 422. *Foster* v. *Frampton, Ib.* 109. *Lickbarrow* v. *Mason,* 2 *T. R.* 63.) At the time of the replevin, of course the *transitus* was at an end, by the previous seizing of the sheriff under the attach-

Jones *v.* Bradner.

ment, and that alone would prevent the vendors from taking them under the law of stoppage *in transitu.* (*Foster* v. *Frampton*, 6. *B. & C.* 109. *Lickbarrow* v. *Mason*, 2 *T. R.* 63.) Upon the facts shown, the right of stoppage *in transitu* does not appear to have been exercised in good faith, even if it existed, and *was* exercised; and the goods appear to have been taken with a view of protecting the debtors, and not for the security of the vendors. There was collusion between the vendors and vendees to avoid the attaching creditors.

*L. R. Marsh,* for the defendants in error. At the time these goods were attached by the defendants below, they were the property of the plaintiffs below and in their possession, and under their control, and had not been delivered to Riley & Walker. The selection and shipment of the goods had not been completed. About three hundred dollars worth of goods was yet unselected and unshipped. The transaction was not ended. It was still in process and in progress. The bills or invoices were not yet sent to Riley and Walker, but were still in the plaintiffs' possession. There was no direction, in the order of Riley & Walker, as to how, or by whom, the goods should be sent. There is a great difference between this case and that of a *personal* purchase, (where the purchaser is present and may take the goods himself,) upon the question *when* delivery takes place and is consummated. The demand of a bill of lading, deliverable to the plaintiffs below upon the surrendering of the receipts, shows that it was not intended to deliver the goods here—but to send them to the plaintiffs' correspondent at Pensacola. It was called out by the defendants below, that the goods after they were replevied by the plaintiffs below were sent by them, to Pensacola, to their correspondent, or subject to their order. These goods, as they were packed, were sent by the cartman of the plaintiffs below to the brig, and receipts taken by the plaintiffs below *and in their name.* The plaintiffs below, Bradner & Co. in fact and in law retained the possession and control of the goods, up to and until they surrendered these receipts, and took a bill of lading, and they had the right to

give up the receipts, and have the bill of lading made out to them, and to designate to whom the goods should be delivered at the port of destination, to themselves, to their order, or to anybody else they might select.   It is the common sense of the transaction.   The receipts are given to plaintiffs below as a security, until the whole shipment is completed.   The receipts state that the goods are received from the plaintiffs below.   The object of these and similar receipts, is, that the shipper may have evidence that his cartman has deposited the various loads, so that he can get a bill of lading for the whole.   Who can maintain an action on the receipts, but the plaintiffs below? Who can get possession of the receipts from the plaintiffs? Who can get a bill of lading for the goods, but upon surrendering the receipts?   If the captain should give a bill of lading to Riley & Walker, he would still be liable to plaintiffs below, on these receipts.   The delivery is not consummated till the receipts are given up, and bill of lading taken, making the goods deliverable to Riley & Walker.   This is also the usage and custom at the port, and in the city of New-York.   This is proved by the witnesses on both sides, and no one disproves it.   This evidence of usage is admissible.   (*Cowen & Hill's Notes, Part* 2, 1409, 1410, 11, 12.  *Dawson* v. *Kittle,* 4 *Hill,* 107.   *Goodyear* v. *Ogden, Id.* 104.)   If this evidence of usage was inadmissible, the defendants below have waived their objections to it, by a full cross-examination of the plaintiffs' witnesses on this subject, and by the introduction of evidence, by their own witnesses, on the same point.   If the objection was good, their counsel should have stood by it.

The questions of fact arising out of the evidence of usage, properly belonged to the jury, and they have passed upon them. (*Dawson* v. *Kittle,* 4 *Hill,* 107.)   It is also the settled law. (*Abbott on Shipping, Lond. ed.* 1844, *p. p.* 321, 328, 346, 526. 6 *Taunt.* 433.  3 *Marshall,* 127, *S. C.*  5 *Bar. & Ald.* 632. 14 *Wend.* 546, 11 *Id.* 557, 63.  24 *Wend.* 169.  2 *Hill,* 147.)

In the case of *The People* v. *Haynes,* (14 *Wend.* 546, 561,) relied on for defense, there were these circumstances:  The goods were *all* selected ; they were all packed in a box ; marked

Charles Haynes, Boston ; Boston was the place of his residence; they were sent on board the Providence steamboat, by *and according to defendant's direction ;* receipt taken from the master, stating that the box was to be taken to Providence, and delivered to the Boston wagoner, who receives the goods at Providence, and delivers them at Boston, according to marks and addresses on packages. *The receipt was, in fact, the bill of lading.* Possession of the receipt was not necessary to enable the purchaser to obtain possession of the goods on their arrival. (*Id.* 562.) Haynes was *personally* present, bought *the goods himself, and received them at the store.* (*Id.* 565.) A very different case, from the one at bar. II. If the delivery of these goods to Riley & Walker was perfected, the plaintiffs below had a right to stop them *in transitu,* on their insolvency being discovered. The defendant Palmer, in his affidavit on which the attachment issued, shows that Riley & Walker had failed to pay their note for $1300. See Chief Justice Bronson's opinion in a similar case. (15 *Wend.* 143. *See also* 15 *Wend.* 137 ; 2 *Kent's Com.* 542.) Palmer did not give any credit on the strength of these goods, and still holds the liability of Riley & Walker. The character of the seizure was extortionate; taking on a debt of $1341.23, nearly $3000 worth of goods.

*By the Court,* EDWARDS, J. In the month of August, 1845, the defendants in error, who were merchants, residing and doing business in the city of New-York, received an order for goods from Riley & Walker, of Florida. The order contained no particular directions as to the manner in which the goods were to be forwarded. The defendants proceeded to select the goods ordered, and a portion of them, after they had been packed in boxes and bales, were placed on board the brig Republic. At the time the goods were thus placed on board the brig, the cartman took from the master two receipts, dated September 19th, 1845. After the receipts had been given, and on the same day, the goods were taken by the sheriff of the city and county of New-York, by virtue of a warrant of attachment, issued against the property of Riley & Walker, pursuant to the provisions of the

statute, applicable to non-resident debtors. After the goods had been thus attached, they were replevied by the defendants in error. On the trial of the cause, the judge charged the jury, that there had not been such a delivery of the goods as rendered them liable to an attachment issued against the property of Riley & Walker. To this charge, the plaintiff in error excepted.

It appears from the testimony, that all the goods ordered had not been selected and placed on board the vessel, and that no bill of lading had been given. The testimony further shows, that when goods are shipped on board a vessel to be sent coast-wise or abroad, it is the practice and custom in the city of New-York, to give a receipt, similar to those which were given in this case, for each load, as it goes on board ; and when all the goods are on board, to deliver up the receipts, and get a bill of lading, which makes the goods deliverable to the shipper's order, or to such other person as he may direct.

In the case of *Craven et al.* v. *Ryder,* (6 *Taunt.* 433,) the plaintiffs had contracted to sell certain goods upon credit, which were to be placed on board a ship for Hamburg. The goods were placed on board the vessel of the defendant by a lighter-man, and when the loading was complete, the mate of the vessel gave an acknowledgment in writing, that the goods were received on board the ship for Hamburg, for and on account of the plaintiffs. The shippers afterwards reclaimed the goods ; and upon a refusal to re-deliver them, brought an action of trover. Upon this state of facts, the court held that the vendors had never parted with their right to the possession of the goods ; and that the person who held the lighterman's receipt was entitled to a bill of lading. In the case before us, the receipts state that the goods were received from the shippers. In that case, the receipt stated that the goods were received for and on account of the shippers. But the court said that they did not *mainly rely on the form of the receipt.* In the case of *Ruck* v. *Hatfield,* (5 *Barn. & Ald.* 632,) a similar rule was recognized.

It would seem that these cases establish the principle, that no person, except the holder of the receipts, is entitled to a bill

Jones *v.* Bradner.

of lading; and if the shipper is also the holder of the receipts, he must necessarily have it in his power to direct to whom the bill of lading shall be made out; or, in other words, to whom the goods shall be deliverable; and until he does so, the right of possession must remain in himself.

The counsel for the plaintiffs in error relied upon the case of *The People* v. *Haynes*, (14 *Wend.* 546,) as establishing a different doctrine. It will be seen by a reference to that case, that Haynes made the purchase of the goods in person; that he selected them himself; had them laid aside; boxed and directed to himself at Boston, which was his place of residence; and that by his direction they were sent to the steamboat for Providence. It was also proved on the trial of the cause, that it was customary when the steamboat arrived at Providence, to deliver the goods to a Boston wagoner, who took them to Boston, and there distributed them according to the marks and addresses; and that a surrender of the receipt was not required before a delivery of the goods. In the case before us, the facts are very different. Here the purchaser lived at a distance; he had not selected the goods; he had not given any directions as to the manner in which they were to be sent to him; the receipt did not state to whom the goods were to be delivered; a surrender of the receipt was necessary before a bill of lading could be received. When all the circumstances of the case are considered, we do not think that the rule laid down in *The People* v. *Haynes*, infringes upon that which is laid down in the English cases above cited.

The next exception taken by the plaintiffs in error, was to the admissibility of the testimony as to usage and custom. We do not think that any rule of evidence was violated by the admission of this testimony. It did not profess to vary the terms of the receipt, nor to control or alter a rule of law. Its tendency was merely to show the general course and practice of trade in similar cases, in order to prevent an extension of the terms of the receipts, by construction and inference. The receipts did not, upon their face, show a delivery; and the evidence of usage went to prove, that in practice such receipts had

been regarded as nothing more than the evidence of the holder's right to a bill of lading, which should designate to whom the property should be deliverable, and who should be entitled to receive it. In *Goodyear* v. *Ogden*, (4 *Hill*, 104,) and *Dawson* v. *Kittle*, (*Id.* 107,) the rule was carried farther than it has been in this case.

We do not think that the objection which was made on the argument, to the form of the action, is well taken, even if that question could be raised here.

Judgment affirmed.