SAMUEL BLISS ET AL.

v.

R. R. GEER.

1.  SALE—DELIVERY—PASSING TITLE.—Where the vendor of goods is required to send them to a purchaser by a designated common carrier, delivery of the goods to the carrier is a delivery to the purchaser himself; the ven dor is divested of all title, and cannot retake them unless there exists a right of stoppage *in transitu*. So, where goods were delivered to a common carrier at Chicago, consigned to the vendee in a particular manner, as had been agreed between them, the delivery to the carrier vested the title in the vendee, and he thereupon became liable to the vendor for the price.

2.  REPLEVIN BY VENDOR IN TRANSITU.—The fact that the goods being seized *in transitu* under a writ of attachment, were taken in replevin, in the name of the vendor, whether by his authority or not, does not change the relation as respects the title to the goods, nor does it impair the vendor's right of recovery against the vendee.

3.  DOCTRINE OF ELECTION.—The delivery of the goods to the carrier being effectual to pass the title to the vendee, the vendor, at the time of the replevin suit, was not in a position to determine whether or not he would assert title to the goods, hence the doctrine of election has no application in this case.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding. Opinion filed December 13, 1880.

This was an action of assumpsit, brought in the County Court of Cook county by appellants, Samuel Bliss and William B. Topliff, against appellee, R. R. Geer, to recover the price of goods alleged to have been sold by the former to the latter. The court below found for the defendant, and the plaintiffs bring the case here for review.

The facts were substantially as follows: Plaintiffs were wholesale grocers in Chicago, and defendant was a retail dealer at Kearney, Nebraska. In July, 1877, the defendant, Geer, ordered a bill of goods of the plaintiffs, through their traveling agent, Wm. Madden, at Kearney. By agreement between

Bliss v. Geer.

the parties, the goods were to be shipped in the name of Madden over the Chicago, Burlington & Quincy Railroad, to Hastings, Nebraska, and from there were to be forwarded to the defendant, at Kearney. This arrangement was made to enable the defendant to obtain reduced rates of freight, which Madden was able to get on goods shipped in his name. Madden was to give defendant a written order for the goods on the agent of the railroad company at Hastings, on their arrival there, which he did, and the defendant forwarded the order to said agent. Madden had no interest in the goods, the only object in having them shipped in his name to Hastings being to get a rebate on the freight. The goods were duly shipped at Chicago, as agreed, and in due time arrived at Hastings, from which place they were sent forward by the railroad agent there, in pursuance of Madden's order, consigned to the defendant at Kearney, where, upon their arrival, they were seized by the sheriff upon a writ of attachment against Madden in favor of the Bank of Kearney. A suit in replevin was soon after commenced in the name of appellants, Bliss & Topliff, to recover possession of the goods, and they were surrendered on the replevin writ to the coroner, who on the following day returned them to the sheriff, the plaintiffs not having furnished a bond, as required by the statute of Nebraska. The replevin suit was subsequently, and about nine months after its commencement, dismissed, as the record recites, " without prejudice."

Messrs. HOLMES, RICH & NOBLE, for appellants; that the replevin suit was in no sense an admission or estoppel against the plaintiffs, cited R. R. I. & St. L. R. R. Co. v. Shunick, 65 Ill. 223; Ely v. Hanford, 65 Ill. 267; Smith v. Newton, 38 Ill. 230; Davidson v. Young, 38 Ill. 146; Flower v. Elwood, 66 Ill. 438; Kinnear v. Mackey, 85 Ill. 96; Ball v. Hooten, 85 Ill. 159.

Mr E. A. SHERBURNE, for appellee.

WILSON, J. The two principal questions arising in the present record are, first, whether there was a delivery of the goods

sufficient to vest the title thereto in the defendant, and if there was, then secondly, whether the subsequent institution of the replevin suit by the plaintiffs, assuming this to have been done by their authority, was sufficient to prevent a recovery by them against the defendant for the price of the goods.

As to the first question, it appears from the evidence that the goods were shipped at Chicago, in the name of Madden, *via* the Chicago, Burlington & Quincy Railroad, to Hastings, where they arrived in due time. Upon their arrival there the agent of the company forwarded them, pursuant to the written order of Madden, consigned to the defendant at Kearney. All this was done in strict accordance with the agreement between the parties at the time defendant gave his order for the goods.

The rule is well settled that where the vendor of goods is required to send them to a purchaser by a designated common carrier, delivery of the goods to the carrier is a delivery to the purchaser himself, the carrier being in legal contemplation, in such cases, the bailee of the person to whom the goods are sent Benjamin on Sales, 2nd Am. Ed. §§ 181, 693, and cases there cited.

The seller is thenceforth divested of all right to the possession of, or control over the goods, and he cannot retake them unless there exists a right of stoppage in *transitu.* Delivery of goods to a servant or agent of the purchaser, or to a master of a vessel, when they are to be sent by water, is equivalent to a delivery to the purchaser, and the property, with the corresponding risk, immediately vests in the purchaser. The effect of a consignment of goods by a bill of lading is to vest the property in the consignee. So, too, the rule is that a delivery to any general carrier where there are no specific directions out of the ordinary usuage, is a constructive delivery to the vendee. 2nd Kent Com. 499; Cotte v. Harden, 4 East Rep. 211; Brown v. Hodgson, 2 Campb. 36; Groning v. Meedham, 5 Mel. & Sel. 189.

But if there be no particular mode of carriage specified, and no particular course of dealing between the parties, the property and risk remain with the vendor while in the hands of the the common carrier. Jones v. Bradner, 10 Barb. 193; Coates

v. Chaplin, 2 Gale & Davidson, 552; 2 Kent Com. 500. These general principles are well settled.

Without stopping to inquire whether the delivery of the goods to the Chicago, Burlington & Quincy Railroad at Chicago, and Madden's order to the station agent at Hastings, did not constitute a delivery to the defendant, we are all of the opinion that when the goods reached Hastings, and the station agent there, acting on the order of Madden, had forwarded them consigned to the defendant at Kearney, the delivery was complete, and the title became vested in Geer, and, as between him and the plaintiffs, were thereafter at his risk. The case stands precisely as if the plaintiff had in the first instance shipped the goods at Hastings, consigned to the defendant at Kearney. For any breach of duty on the part of the railroad company, or wrongful act of a stranger thereafter committed in respect to the property, the buyer, and not the seller, could maintain an action. The contract of bargain and sale was completed by the delivery of the goods to the agent of the railroad company at Hastings. The order of Madden which gave appellee the right to control the goods was never revoked, nor has there ever been any act done by Madden inconsistent with it. The goods were duly forwarded in pursuance of the order, and duly arrived at Kearney, where they were called for by appellee, but were seized on an attachment against Madden, who never had, nor claimed to have any interest in them. Appellants had thus done all they were required to do by the terms of the contract, to vest the title of the goods in appellee, and we are therefore of the opinion that the plaintiffs were entitled to sue for and recover from appellee the price of the goods, unless such right of recovery was defeated by the institution and dismissal of the replevin suit.

In respect to the replevin proceedings, it would be enough to say there is no sufficient evidence that they were authorized by appellants. Aside from the transcript of the record of those proceedings, the only evidence on the subject of authority in respect thereto is found in the testimony of Madden. He testifies that he received a letter from Geer, stating that the goods had been attached by the Kearney Bank, and asking

what he had better do. Madden says: "I telegraphed him to replevy the goods and we would sustain him *in his title*." It will thus be seen that Madden not only did not direct the bringing of a suit in the name of Bliss & Topliff, but, on the contrary, the direction was that Geer (in whom the title was vested, and who would therefore be able to maintain a suit,) should replevy the goods, and that "we" would sustain him in his title. Moreover, Madden testifies that he had no authority to direct the institution of legal proceedings in behalf of Bliss & Topliff—that he acted as their agent while taking orders for goods, but beyond that he had no authority to act for, or bind them in any way. He further testifies that he received no instructions from the plaintiffs in relation to commencing the replevin suit, nor does it appear that he informed them of the seizure of the goods by the bank prior to the time of his sending the message to Geer to replevy them.

The record is thus barren of evidence that appellants authorized the institution of the replevin suit, certainly not a suit in their name. We think it fairly inferable that Madden acted upon his own responsibility when advising appellee to commence legal proceedings; and that if, as is claimed by appellee's counsel, there is any legal presumption that an attorney of record in a suit is authorized by the party whom he assumes to represent, to act, such presumption in the present case is fully rebutted by the evidence. The inference seems to us to be a legitimate one from the proofs, that appellee himself, acting upon the advice of Madden, employed the attorney and commenced the replevin suit.

But assuming the replevin proceedings to have been authorized by appellants, we are unable to perceive upon what grounds it can be held that their right to maintain a suit against appellee for the recovery of the purchase price of the goods is thereby impaired. If, as we have endeavored to show, the title to the goods had become vested in appellee, his right of action for their wrongful seizure to satisfy Madden's debt, was perfect, and could no more be defeated by the bringing of a suit by appellants against the sheriff, than it would be by the bringing of a like suit by a person who never

had any interest in, or connection with, the goods. After the sale and delivery of the goods to appellee, appellants occupied no other or different relation to them than that of a stranger. Their seizure by the sheriff was no more an invasion of appellant's rights than it would have been if appellee had taken manual possession of the goods on their arrival at Kearney, and placed them on the shelves in his store before they were seized, nor than would have been the seizure of any other of appellee's goods. Appellants could maintain no suit for the recovery of the goods, for the obvious reason that they were neither the owners of, nor entitled to, the possession of them. The bringing of a replevin suit by them was, as to appellee, a wholly immaterial and harmless proceeding, and could not prejudice the right of the owner to resort to any appropriate remedy for the wrongful taking of his property. He was at liberty to wholly ignore and disregard any suit brought by third persons, without his authority, against the sheriff or plaintiff in the attachment.

It is obvious that the principle of election has no application to the facts of the present case. Election, as used in its legal sense, is defined to be the choice of one of two rights or things, to each one of which the party choosing has an equal right, but both of which he cannot have. 1 Bouv. Law Dict. p. 520, Tit. Election. And undoubtedly the rule of law is that an election once made and pleaded, the party is concluded. 11 John. 241; Coke Litt. 146. If at the time of the replevin the plaintiffs had been in a position to make an election as to whether they would, or not, assert title to the goods, then the institution of the replevin suit might have been an election on their part of which the defendant in this suit could, perhaps, have taken advantage. But they occupied no such position. They had already delivered the goods to the defendant, and had a right to only one thing, namely, the money for the purchase price. They thus had no " equal right to each one of two things," and consequently no right of election. The institution of the replevin suit placed no obstacle in the way of appellee's right to sue for and recover the possession of his goods, or damages for their wrongful taking; and if he has neglected to avail him-

self of his legal remedies, it furnishes no ground for refusing to pay appellants for the goods; nor, on the other hand, are we aware of any rule of law that prevents a creditor from enforcing a legal demand against his debtor by reason of having mistaken his action and dismissing his suit, or by having sued a wrong party and failed to recover, if he subsequently bring a proper action against the party actually indebted.

We are unable to see anything in the replevin proceedings that can operate as an *estoppel* against appellant's right to sue for the price of the goods. In Pickard v. Sears, 6 Adol & Ellis, 469, the leading English case on that subject, Lord Denman formulated the doctrine of estoppel by matter *in pais* thus: "But the rule of law is clear that where one by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous condition, the former is concluded from averring against the latter a different state of things existing at the same time." See, also, to the same effect, Stephens v. Baird, 9 Cow. 274; Dezell v. Odell, 3 Hill, 222; Hefner v. Vandolah, 57 Ill. 520; Flower v. Ellwood, 66 Ill. 438; Talcott v. Brackett, 5 Bradwell 60, and cases there cited. The proof wholly fails to bring the cases within any principle of estoppel. There is no proof that appellee was induced to, or did, change his previous condition in respect to the goods by reason of anything said or done by appellants; there was no evidence offered to show that appellee was induced to omit the doing of any act which he would have done but for the institution of the replevin suit; and no proof that what was done resulted in any injury to appellee.

Nor is the fact that plaintiff's attorney made an affidavit, when suing out the replevin writ, that the plaintiffs were the owners of the goods, to be construed as an assertion of right to them as against appellee. The record fails to show that appellants have anywhere asserted a right to the goods as against appellee, nor have they ever disputed his title thereto. In order to obtain possession of the goods from the sheriff, their attorney made oath that they were the owners; and in this he was mistaken, but it resulted in no injury to appellee.

For the reasons hereinabove stated the judgment of the court below is reversed and the cause is remanded for further proceedings, not inconsistent with the views herein expressed.

Reversed and remanded. ·