W. F. LANCASTER *vs.* THOS. AND PHILIP BALTZELL. *June,* 1836.

In an action by an endorsee against the maker of a note, the latter being called on to pay it, after an examination of it, replied it was right; that he was going to W. for the purpose of showing himself entitled to *certain* credits, and upon his return he would settle the note with the plaintiffs. The first endorsement on the note, of the name of the payee, was a forgery. *Held*, that the action could not be maintained.

A bill or note payable to order can only be transferred by endorsement.

An action against the acceptor or drawer, can *only be maintained by one* who has the legal title ; the note must be endorsed by the person to whom or to whose order it is made payable, and a plaintiff cannot sustain his action against the acceptor or drawer, when the signature of the payee is forged.

Where the drawee of a bill was asked if the acceptance was in his handwriting, says that it is, and that it will be duly paid, he cannot afterwards set up as a defence the forgery of his name, against one whom he thus induced to take his acceptance.

APPEAL from *Charles* county court

On the 1st of July, 1833, the appellees instituted an action of *Assumpsit* against the appellant, as the maker of a promissory note for $333 34, at ten months, from the 15th

of March, 1832, payable to the order of *Mrs. Eleanor Gardiner*, and purporting to be endorsed by her, and one *H. S. Gardiner*. The general issue was pleaded.

1. At the trial the plaintiffs give evidence by their attorney, that he called on the defendant to pay the note on which the present action is brought, and that the defendant after an examination of it, replied it was right. That he was going to *Washington*, for the purpose of showing himself entitled to certain credits, and that upon his return he would settle the note with the plaintiffs. That at the time the said note was presented, and the above conversation occurred, the said endorsements were on it, but the witness was unable to say whether the defendant saw the endorsements. That suit was brought on the note to the term next succeeding the conversation.

The defendant then proved, that the first endorsement on the note was a forgery, though the second was genuine.

And thereupon the plaintiffs prayed the court to instruct the jury, that if they believed, the defendant, when the note was presented to him by the plaintiffs' attorney, examined the endorsements and said it was right, that then the plaintiffs are entitled to recover, although they may believe that the endorsement of *Eleanor Gardiner* is a forgery, and notwithstanding the acknowledgment was made after the transfer of the note to the plaintiffs.

The court (*Stephen, Ch. J.*) gave the instruction thus prayed. The defendant excepted, and the verdict and judgment being against him he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J. and DORSEY, CHAMBERS and SPENCE, Judges.

CAUSIN for the appellant.

The title of the plaintiffs resting upon a forged endorsement, they were incompetent to maintain an action upon the note. Such an endorsement transfers no interest whatever. *Chitty on Bills*, 125. 2 *Stark Ev.* 245, 286. *Chitty Jr.* 100 *x. a.*

And if the drawer had paid the money to the plaintiffs, he would have been liable to pay it again to the rightful owner.

2. His promise to pay does not conclude him as to the genuineness of the hand-writing of the endorser, though the acceptor of a bill may be bound to know the writing of the drawer, and having once admitted it to be genuine is precluded from afterwards contesting it; the rule upon that subject being confined to the immediate parties to the instrument. *Chitty, Jr.* 14. 4 *Esp. Rep.* 226. 4 *Term Rep.* 9.

The plaintiffs took the bill before the defendant's acknowledgment, and consequently that acknowledgment could not have been their inducement for doing so. Nor were they induced to forbear, as the evidence shows, that they brought suit to the term next succeeding the conversation with the witness. If however the defendant had admitted the endorsements to be genuine before the plaintiffs took the note, they could not still recover. 4 *Campb. Rep.* 223.

The object of the plaintiffs in applying to the defendant, had no reference to the genuineness of the endorsements, or to the question, whether they should take the note or not. They had themselves assumed the first, and had already taken the note. Their only object must have been, to save proof of the endorsements at the trial, or to collect the money without suit at all. The endorsements were upon the note when the plaintiffs took it, but were not there when the defendant made it. The former therefore, and not the latter assumed them to be genuine.

DULANY for the appellees.

The jury by the verdict which they gave, found as facts in the cause, that *Lancaster* after an examination of the endorsements upon the note, said it was all right, and that he would settle it. There is no evidence to shew that the plaintiff below, ever afterwards received any information or entertained any suspicion, that the endorsement of the name of *Eleanor Gardiner* was forged until evidence of that fact was

offered at the trial of the cause below. From the time of the conversation of *Lancaster* with the plaintiffs' attorney, in which *Lancaster* acknowledged his obligation to discharge the note, the plaintiff was impressed with a belief of the genuineness of the endorsements, and acting upon this belief he made no demand upon the person from whom he received the note, but employed an attorney and instituted his action upon the note, against *Lancaster.* Now the general rule of law, as laid down in, 1 *Stark. Evid. new ed.* 389, is, " that a party is *barred* by his own admission, or representation, particularly if the other party has *acted* on the faith of it." The cause in *Leach vs. Buchanan,* 4 *Esp.* 226, is one of this character. There a party, whose acceptance had been forged, on the bill being presented to him by a third person, with a request to know if the bill had been accepted by him, answered " *bona fide,*" but through mistake, that it had; he was held to be *liable.* as acceptor, as it was upon the faith of his declaration that the bill had been taken. Where A. B. executed a warrant of attorney in the name of C. D. held, that judgment was properly entered up, and " *fi. fa.* " and execution issued against him by that name. *Reeves vs. Slater,* 7 *B and C.* 486. So where the obligor of a bond, represented to a purchaser, that it was good and would be paid, he could not afterwards offer a defence, that it was void, as having been given for a gaming debt. *Davidson vs. Franklin,* 1 *B, and Ald.* 142. Where *William* being asked, gave his name as *John,* it was held that he could not afterwards say, that it was *William. Price vs. Harwood,* 3d *Campbell,* 108.

So also, where the tenant, on application of *Lessor's* attorney, as to the commencement of his tenantcy, misinformed him, and notice was given in conformity with the tenant's answer, it was held, that he was concluded by it, and that it made no difference whether the information so given, resulted from accident or design, since he had induced the other party to act upon it. *Doe vs. Lambley,* 2d *Esp. C.* 635—2d *Stark. Evid.* 299.

The above are all cases where parties were estopped from showing the truth of a fact, which they had represented differently, and thereby induced others to *act* upon the faith of these assertions and statements; and the law it is apprehended, would be precisely the same, if a party is prevented from acting and pursuing his legal remedies against third parties, in consequence of a false or erroneous statement; as in the instance now before the court, for if *Lancaster* had stated in the conversation given in evidence, that the endorsement of *Eleanor Gardiner* was a forgery, instead of declaring that the note was right, and he would settle it, can there be a doubt, that the plaintiff would instantly have applied to the person from whom he received the note, and demanded payment of his debt?    But reposing confidence in the acknowledgment of *Lancaster*, the plaintiff not only abstained from pursuing his debtor, but did actually employ counsel, and instituted suit upon the note against *Lancaster*, and was surprised by the defence of forgery, set up for the first time, at the trial.    And should this defence prevail, it is clear, that the plaintiff will be injured to the amount of the costs of his suit, and the fees paid to his attorney, and this from acting on the faith of *Lancaster's* representation that the note was all right and that he would settle it.

The case of *Mead vs. Young*, cited from *4th Term Rep.* 9, is not in point, no representation was there made, by the person sought to be charged with the amount of the bill, that could have misled the holder.    Besides, in that case, the instrument had been either lost or stolen, and the question of responsibility turned somewhat at least, upon the laches of the parties.—*Ld. Kenyon* thought, that as the instrument was one of a negotiable character, and came to the hands of a "*bona fide*" holder for value, in the course of business, that the plaintiff ought to recover, especially, as he imputed the loss of it, to the *negligence* of the true owner.    But the court thought, that the party who received it, was most guilty of negligence, and directed a verdict for the defendant. · Perhaps the opinion of *Lord Kenyon*, is more consonant to the

ideas that now prevail in regard to commercial instruments, than that of the other members of the court. Be this however as it may, there is no proof whatever, that the note in question, in this cause, was either lost or stolen; from the evidence it was competent for the jury to infer that it came into the hands of *Henry Gardiner* the second endorser, by a delivery from *Mrs. Gardiner*, the payee, though without her endorsement. And if so, she placed a confidence in *Gardiner*, which if he violated, by forging her name, and endorsing his own on the note, renders it just, that she should suffer by so negligently trusting one so little worthy of it, rather than an innocent " *bona fide* " holder, who received the note, in due course of trade; and should it be observed in this case, on the principle just stated, that the plaintiffs are entitled to recover, it would on the same principle be determined, in an action by *Mrs. Gardiner* against *Lancaster* upon the note, that she would not be entitled to recover.

Where the agent of an endorsee, the holder of a promissory note, called upon the maker for the payment of the note, and the maker offered to pay the same in goods, it is unnecessary in an action upon the note, to prove either the hand-writing of the maker, or previous endorser, as the offer to pay, amounts to an admission that every thing had been done necessary to the endorsee's right to receive the money. *Keplinger vs. Griffith*, 2 *G. and J.* 276.

BUCHANAN, Ch. Judge, delivered the opinion of the court.

A bill or note payable to order, can only be transferred by endorsement; and as an action against the acceptor or drawer, can only be sustained by one who has legal title, which cannot be derived through the medium of forgery, it is incumbent on the plaintiff in such an action, to show his interest in the bill or note, which must be done by proving that it was endorsed by the person to whom, or to whose order, it is made payable.

This is an action by the second endorsee against the maker

of a promissory note, payable to the payee or order, which was resisted at the trial on the ground, that the first endorsement, purporting to be by the payee was a forgery, of which proof was offered by the defendant.   On the part of the plaintiffs, it was proved, that the defendant on being called on by their counsel, after the endorsement to them, to pay the note, examined it, and said it was right, and he would settle it with them.   Upon which the court instructed the jury that if they believed, the defendant when the note was presented to him by the counsel of the plaintiffs, had examined the endorsements and said it was right, the plaintiffs were entitled to recover, although they might believe the endorsement of the payee's name had been forged, and notwithstanding that acknowledgment had been made, after the transfer of the note by these endorsements to them, on an exception to which instruction the case is brought up.

Apart from the alleged conversation between the defendant and the counsel of the plaintiffs, it is very clear, that the plaintiffs are not entitled to recover, if the first endorsement in the name of the payee of the note was forged ; as the title was not and could not thereby be transferred, but continued in the payee, who on obtaining possession of the note, might sue upon it, and recover against the maker, notwithstanding he should have paid it to him, into whose hands it came, through the medium of the forgery ; for besides that in such case, the payee has not parted with his title, the payee of a note whose name is forged, knows nothing of it, and the maker before he pays it to the holder as endorsee, should look carefully to the endorsements.   And if one is to suffer, the loss should fall on. him who is most in fault, or most negligent.

The only question then, in this case is, whether, if after the endorsements had been made, the defendant, on the note being presented to him, by the counsel of the. plaintiffs, examined the endorsements and said it was right, that makes any difference.   And we think it does not.   By saying so, he gave no credit to the note ; and did not thereby induce

the plaintiffs to take it. That had been done before, and not on the faith of what he said. The plaintiffs might before they took the note, have inquired whether the first endorsement was by the payee or not, and not having done so, they must abide by the consequence and cannot throw the loss upon the defendant, who had done nothing to mislead them or induce them to take the note. And who if made to pay the amount in this action, may be made to pay it over again by the payee, whose right remains unimpaired.

It is not like the case of a drawee of a bill, who if on being asked if the acceptance is in his hand-writing, says that it is and that it will be duly paid, cannot afterwards set up as a defence the forgery of his name; because by saying so he has accredited the bill and induced another to take it, which being his own fault the loss ought to fall on him, and not on another, who has been induced to take the bill on the faith of his assurance.

JUDGMENT REVERSED.