Starr vs. Yourtee.

(Decided Oct. 9th, 1861.)

---

# BENJAMIN F. STARR *vs.* AARON B. YOURTEE.

A promissory note, with the defendant's name endorsed thereon, was, on the day of its date, delivered to a party for value, who received it in full faith, without inquiry as to the genuineness of the endorsement, and afterwards, and before its maturity, but without endorsement, passed it to the plaintiff for value, without communicating to him any suspicion as to the genuineness of the defendant's endorsement, or any knowledge of conversations which he and the defendant had had in regard to the note. HELD:

That the defendant was not estopped from setting up the defence of *forgery* by any thing he may have said to the party from whom the plaintiff received the note, because the plaintiff received it wholly *uninfluenced* by any thing the defendant had said in regard to the note.

Admissions of a party are strong evidence against him when invoked in behalf of one *whose conduct was influenced* by them, but they are of no avail to the advantage of an entire stranger, and the party making them may, as against a stranger, show that they were founded in mistake.

APPEAL from the Circuit court for Washington county.

*Action,* brought on the 22nd of June 1858, by the appel-lant, as endorsee, against the appellee, as endorser, of a promissory note for $2152.26, purporting to be drawn by Howard Paceley, in favor of William C. Kirkhart, or order, dated the 22nd of April 1857, at twelve months, payable at the Frederick County Bank, and purporting to be endorsed by said Kirkhart and the defendant. The defendant pleaded that he did not endorse as alleged, and the defence relied on by him at the trial was forgery.

*Exception:*—The evidence is sufficiently stated in the opinion of this court. The plaintiff submitted five prayers, of which the *first* and *second,* submitting to the jury to find from the evidence that the defendant's endorsement was in his own handwriting, or that he authorised the maker or some other person to put his name thereon, were conceded by the defendant. The other prayers are, in substance, as follows:

3rd. That if the jury shall believe from the evidence in the cause, that the defendant did not endorse the note sued on in his own handwriting, but that said endorsement was made by the maker, or any other person, without the knowl-edge or consent of the defendant, and, so endorsed, was delivered to the witness Johnson, for value, and that afterwards, and before it became due, Johnson transferred and delivered it to the plaintiff, but that before this transfer and delivery, the defendant became acquainted with the fact of his name having been so used as endorser, and acknowledged, recognized or sanctioned it, or treated it as his own, by which said Johnson was lulled into security, or was induced to rely and act upon it as the defendant's own endorsement, then such conduct on the part of the defendant was an adoption of the said endorsement by him, and he is now bound by it and estopped from denying it as his endorsement.

4th. That although the jury may believe from all the evidence before them, that the defendant did not, in fact, endorse or sign his name on the back of said note, but that his name was endorsed thereon without his assent or authority

by Paceley, the maker, yet if they believe and find that after such making and endorsement, and after the note had been negotiated, and was in the hands of a *bona fide* holder thereof for value, and before its maturity, and before it was transferred to the plaintiff, the defendant became and was made acquainted with the fact of such endorsement and use of his name on said note, and that the same was in the hands of a *bona fide* holder thereof, as aforesaid, and that he did not object to such endorsement or make any complaint thereof, and did not and would not declare such use of his name as a forgery, but acquiesced in such endorsement, and treated said note and the holder thereof as if it had been duly endorsed by him, and thereby induced or caused the holder to believe said endorsement of his name was genuine, or made on due authority, and that said holder afterwards, and before its maturity, transferred said note to the plaintiff, then such acquiescence and conduct of the defendant amount to a ratification and adoption of the said endorsement, and is equally binding as if he had endorsed said note by his own hand.

5th. That if the jury find that the defendant did not, in fact, endorse said note before the negotiation thereof, but that his name was endorsed thereon by Paceley, the maker, without authority of the defendant, and that the note was afterwards negotiated and passed by Paceley into the hands of a party as holder, for value, and while in the hands of such holder, and before its maturity, the defendant became and was made acquainted with the fact of his endorsement of his name on said note by said Paceley, and did not thereupon object to or complain of the use of his name as aforesaid, by said Paceley, but afterwards saw said Paceley in regard to such use of his name, and upon the assurance of said Paceley that the said note would be provided for and taken up at maturity, the defendant consented to let said note and endorsement thereof stand, and that said endorsement might appear and pass as the act of the defendant, and was so held out by the defendant to the holder of said note, and that afterwards, and before said note became due, the said holder transferred it to the plaintiff, then by the acts and conduct

of the defendant he has adopted said endorsement of the said note as his own.

The court (PERRY, J.) rejected these prayers, and to this ruling the plaintiff excepted, and the verdict and judgment being against him appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*D. Weisel* and *R. H. Alvey,* for the appellant:

Though the name of the appellee may not have been placed on the note by his own hand, and may have been originally a forgery, yet he has by his subsequent acquiescence and conduct adopted the endorsement, and became a party to the note, and he is, under the facts stated in the prayers, estopped to deny his signature. He has done so 1st, by his conduct towards the holder, adopting the endorsement whilst the note was in his hands; and 2nd, by making the forger his agent and adopting his act.

In *Price vs. Neal,* 3 *Burr.,* 1354, it was held that the acceptor of a *forged bill* who *paid* the amount thereof to an endorsee, who received the bill *innocently, bona fide* and *for value,* could not recover the money back from such endorsee after he had discovered it was a forgery, and the same doctrine was affirmed in *Smith vs. Mercer,* 6 *Taunt.,* 76; in 5 *Taunt.,* 488, *Jones vs. Ryde;* in 3 *Barn. & Cress.,* 428, *Wilkinson vs. Johnson,* and in 15 *Mees. & Wels.* 486, *Lambert vs. Heath.* These cases go on the ground of want of *due caution, diligence* and *good faith,* on the part of the parties who had the best means of ascertaining the forgery, and who, by their acts, gave *credit* to the bills and induced innocent parties to take them. In *Barber vs. Gingell,* 3 *Esp.,* 60, it was held that the fact that the defendant had paid *other bills forged* by the same party, is an answer to the defence of forgery, *Lord Kenyon* saying, that by such acts he had *adopted* the acceptance, and made himself thereby liable to the payment of it. In *Leach vs. Buchanan,* 4 *Esp.,* 226, a party on a bill was asked by the plaintiff if the acceptance was in his

handwriting, and he answered that it was and would be duly paid, and it was held that this concluded him from setting up the defence of forgery. And in the case of the *Salem Bank vs. Gloucester Bank*, 17 *Mass.*, 26 to 30, Chief Justice Parker reviews all the cases with great ability, and decides that a party may, by acknowledging, recognizing and adopting a spurious signature, make himself liable therefor, and that the various acts and declarations which go to constitute adoption or ratification, are evidence of a promise. In *Crout vs. De Wolf*, 1 *Rhode Island Rep.*, 393, it was decided that, if a person whose signature is forged treats the forged notes as valid, and thereby leads *the community* to believe that the forger has authority to draw notes in his name, he will be bound to pay similar notes purchased by one who is deceived by his conduct, and that where the person whose signature is forged, promises the forger to pay the note, this amounts to a *ratification* of the signature, and binds him. Similar implication of authority from the endorser to the forger to use his name, was sanctioned in *Weed vs. Carpenter*, 4 *Wend.*, 219, see, also, 5 *Phillip's Ev.*, 13. In such cases the forger becomes the *agent* of the party whose name is forged, and acquiescence in or approbation of the agent's conduct binds the principal. 12 *Johns.*, 300, *Cairnes, et al., vs. Bleecker.* 6 *Adol. & Ellis*, 469, *Pickard vs. Sears.* One may become a party to a note or bill not only by his own immediate act, but also by that of his agent, and this authority may be by parol, by letter, by verbal directions, or may even be implied from certain relations proved to exist between the actual maker of the note, and him for whom he undertakes to act, and it may also be inferred from the subsequent assent or ratification of the party who is charged by the writing. *Chitty on Bills*, 30, 31. 11 *Mass.*, 98, *Long vs. Colburn.* 1 *Kent*, 785 to 788, (7th Ed.) *Paley's Agency, ch.* 3, *sec.* 2, *part* 1. In the case of *Fitzpatrick vs. School Commissioners*, 7 *Humph.*, 224, it was decided that where a party, whose name was forged to a note as security thereto, and he subsequently takes a deed of trust on property to secure him against liability, the acceptance of such deed amounts to a

44      v.17

*ratification* of the forgery. And in *Byers vs. McClanahan,* 6 *G. & J.*, 250, it was held, that the question of adoption was a fact to be collected from circumstances, and a subsequent acknowledgment of the signature, as his handwriting, to a party making the inquiry, without any intimation that he did not consider himself bound by the bond, is sufficient proof of such adoption. From these principles and authorities, we insist, that the law of the plaintiff's prayers is correct, and that they should have been granted.

*A. K. Syester* and *Wm. T. Hamilton,* for the appellee:

The defence raised by the prayers and the evidence in the cause, is that of an *estoppel in pais.* Estoppels are rigidly construed, for they tend to close the door to legal investigation and equitable results, and they cannot be extended beyond the reason on which they are founded. Admissions are easily proven, and where there is a zealous witness all qualifications or explanations are soon forgotten, or purposely lost in the more striking and available words. To create an estoppel *in pais*, it must be brought within the reason of the rule, and the general rule is, that "where one, by his words or conduct, *wilfully* causes another to believe the existence of a certain state of things, and induces *him* to act on that belief, so as to alter *his* own previous position, the *former* is concluded from averring against the *latter*, a different state of things as existing at the time." Now this doctrine does not apply to this case, because the *appellant* was *not induced* to any line of conduct by the acts or admissions of the appellee, such admissions or declarations having been made to a *stranger* to this suit and never communicated to the *appellant*. An estoppel will not be carried further than is necessary to protect a party from being *injured* by *his reliance* on acts or declarations of the opposite party. To give acts or declarations the character of an estoppel, it must appear that they have influenced the conduct of the party who attempts to set up or enforce the estoppel. These principles are clearly laid down in 2 *Smith's Lead. Cases*, 642, 643, 644, where all the decisions and authorities are collected and commented on

Starr *vs.* Yourtee.

in the able note of *Hare & Wallace*, and they have also been fully recognized by our own Court of Appeals in the cases of *Alexander vs. Walter*, 8 *Gill*, 250, and *Lancaster vs. Baltzell*, 7 *G. & J.*, 468, a case in principle precisely like the present. Now there is no evidence that the appellant was influenced to take the note by any thing said or done by the appellee. Johnson got the note after it was endorsed; he took it without making any inquiry about it, and before its maturity transferred it to the appellant, without his endorsement, and never told the appellant of any suspicion he had about it, or any of the conversations he had with the appellee respecting it, nor did he tell him that the maker had before absconded for forging, although he knew it, and was all the while engaged in trying to get the appellee into a legal obligation to pay it. The appellee's name was as well a forgery, when the note passed to the appellant, as when it was held by Johnson. The appellant was not induced to take it by any representation made to him by the appellee or Johnson. The appellant did not know the appellee, and never spoke to him, or any one for him, in reference to the note. He did not take the note relying upon any thing said or reported to have been said by the appellee, nor did he afterwards continue to hold it as good from any representation made to him by the appellee. It is impossible, it seems to us, to say that the doctrine of estoppel *in pais* is applicable to such a case.

But if the prayers are held not to announce the law of estoppel, then they simply declare that certain declarations and admissions amount in law to an acquiescence, ratification or adoption by the appellee, of the acts of the maker of the note, in endorsing his name originally, without any authority. But no case can be found where such conclusions, in law, have been drawn from any relation other than that of *principal* and *agent*. As between *strangers* such conclusions are unknown.

Le Grand, C. J., delivered the opinion of this court.

This was an action brought by the appellant, as endorsee,

Starr vs. Yourtee.

against the appellee, as endorser of a promissory note, made by Howard Paceley, payable to William C. Kirkhart, endorsed by the names of William C. Kirkhart and Aaron B. Yourtee, the appellee. The note was regularly protested, and the parties duly notified.

The defence was, that the name of the appellee had been forged in the endorsement of the note.

The plaintiff offered five prayers, the first two were conceded, and the others rejected.

The facts of the case, so far as developed by the record, and necessary to be considered in connection with the propositions of law embraced in the prayers, may be thus stated: It appears that a certain William Johnson agreed to do work on a mill for Howard Paceley, for which he was to be paid, according to the terms of the contract, cash, but by a subsequent arrangement, he agreed to accept and did accept, in lieu thereof, the note which is the subject of controversy in this suit. The note, according to the testimony, was delivered to Johnson on the day on which it bears date, having the endorsement of both Kirkhart and the appellee, Yourtee, on it at the time. There is no question as to the genuineness of the signature of the maker, nor of that of the endorsement by the payee, Kirkhart. It is conceded that the endorsement in the name of Yourtee is a forgery. The right to recover as against Yourtee, is rested entirely upon the ground that his conduct in regard to the note, whilst it was in the possession of Johnson, was such as to make him responsible to an innocent holder for value. The solution of this question of course depends wholly upon the evidence, and especially upon the declarations of Yourtee, in regard to the note. It may be here remarked, that the note was passed to the present holder of it, the plaintiff, without any endorsement on the part of Johnson.

Two witnesses testify as to conversations held with the defendant, touching the note, the genuineness of the endorsement in his name, and his responsibility because of such endorsement. The witness, Bateman, states that sometime in January 1858, he accompanied Johnson on a visit to the de-

fendant, and that during the conversation which then took place, "Johnson handed to the witness the note sued on in this case, which he said was the same note which the witness then read; he then turned it over and read the name of William C. Kirkhart endorsed on it, and something was said about it; he then read Aaron B. Yourtee's name, and asked Mr. Yourtee whether it was his name, and he said it was his name; he neither said nor intimated that it was not his." Witness further says that during the same conversation, "he read the name of Aaron B. Yourtee, and asked him (the defendant) whether it was his name, and he said it was his name; thinks the note was not handed to Yourtee, but he saw it. In this conversation Johnson spoke to Yourtee about taking the amount in payments, if he would make it safe to him, and Yourtee replied, it was kind in him. Witness had no suspicion about the signature being genuine, as he knew nothing about it." The witness, Johnson, after detailing how he became possessed of the note, and under what circumstances he endeavored to get rid of it, proceeds to say, that "he saw Mr. Yourtee some months after he got the note, meeting him on horse-back. He showed him the note and his name on it, and at first Mr. Yourtee said he did not recollect when he signed it. Witness then required him to say distinctly whether it was his signature or not, because if it were not his, he would have a legal investigation about it. Mr. Yourtee said, in reply to this, 'I won't say it is not mine,' and added that he would see Paceley about it. He told Mr. Yourtee he wanted to use it, and if he agreed to renew the note, he would deduct from it a small amount which Paceley claimed, and which he was willing, in that event, to allow— about twenty dollars. He declined giving a new note without seeing Paceley. The witness met the defendant afterwards, near his house, and before Paceley left Washington county, when the defendant told witness he was satisfied the note would be met at maturity; that he had talked with Paceley about it, and Paceley said he need have no fears, that he had made arrangements with Mr. Ross, in Baltimore, to meet it. Witness then asked defendant if he, defendant, was in

the habit of endorsing for Paceley? He replied he was not; that this was the first time he had endorsed for him, and it should be the last for him or any body else." On cross-examination, he says, that "the note was his; he sold it to the plaintiff for sixteen pair of mill-burrs. * * * When he delivered the note to the plaintiff, he informed him that the defendant, Yourtee, was good, and also what Paceley had said about it. * * * Witness never had any doubt about Mr. Yourtee's signature, as Mr. Yourtee told him it was his; * * * he never told witness that his name was a forgery, but in the conclusion of the first conversation he could not say it was not his."

From this synopsis of the testimony, and it contains all which is pertinent to the inquiry before the court, it is plain that Johnson originally received the note in full faith, without inquiry as to the genuineness of the endorsement of the defendant, and that he passed it away to the holder, the the plaintiff, without communicating to him any of his suspicions, if any he had, as to its not having been endorsed by the defendant, and also without communicating to the plaintiff any knowledge of the conversations which had taken place between the witness and the defendant in regard to the note.

There is, undoubtedly, sufficient in the evidence to have authorized the plaintiff to have gone before the jury as to the fact of the genuineness of the endorsement of the defendant, and this, by the granting of his first prayer, he was permitted to do. But there is now no such question before us on the prayers; besides, it was expressly conceded, in the argument, that the name of the defendant, on the note, was a forgery.

The only question, then, for our determination is: Do the statements of the defendant, as testified to by the witnesses, Bateman and Johnson, make him responsible to the plaintiff on the note?

It is clear, on the testimony, that the plaintiff received the note wholly uninfluenced by anything which the defendant had said or done in regard to it; and it is equally obvious that

Starr *vs.* Yourtee.

Johnson originally obtained possession of it without any such knowledge.

If the defendant be denied the privilege of setting up the forgery as a defence, it must be upon the ground of estoppel; an estoppel *in pais.*

The true rule is this, that whilst the admissions of a party are strong evidence against him, when invoked on behalf of a party whose *conduct was influenced by them,* they are of no avail to the advantage of an entire stranger to them, and the party making them, as against a stranger, may show that they were founded in mistake.    In accordance with this principle, the plaintiff cannot maintain this action; he was in no degree influenced or damnified by any thing which the defendant said or did in regard to the note; his action was wholly independent of that of the defendant.    In principle, this case is the same as that of *Lancaster vs. Baltzell,* 7 *G. & J.,* 468. That was an action of the endorsers against the maker of a promissory note, and the defence was, that the endorsement of the name of the payee was a forgery.    It appeared that *after* the note came into the possession of the endorsees, the maker was called upon, who examined the endorsement and said it was right.    The court say, in regard to this state of case, that "the only question, then, in this case, is, whether, if after the endorsements had been made, the defendant, on the note being presented to him by the counsel of the plaintiffs, examined the endorsements and said it was right, that makes any difference?    And we think it does not.    *By saying so, he gave no credit to the note;* and did *not thereby induce the plaintiffs to take it.*"    In the same opinion, the court elsewhere say, "if one is to suffer, the loss should fall on him who is most in fault, or most negligent."  *

Entertaining these views in regard to the case, we are of opinion the court correctly rejected the third, fourth and fifth prayers of the plaintiff.

*Judgment affirmed.*

(Decided Oct. 10th, 1861.)