# MARSTON HEFNER

*v.*

# JAMES VANDOLAH.

1. ESTOPPELS IN PAIS—*and herein of the principles governing the same.* If a party make a declaration, or do any act to induce another to do an act that he would not otherwise do, or to invest his capital on the faith of such declaration or act, he will be estopped to deny the truth of his declaration, or the just effect of his act.

2. When a party is interrogated concerning a transaction which affects the interests of another, if he remains silent, or answers falsely, and if the other is misled thereby, such party will be held bound by his silence or his false declarations.

3. When a party is induced, by the acts or the declarations of another, to do an act he would not otherwise have done, or omits to do an act he would have done but for the conduct of such party, and injury results therefrom, the party who induced such action, or non-action, must be held responsible for the consequences.

4. The doctrine of estoppels *in pais* is to prevent injuries arising from acts or declarations which have been acted on in good faith, and which it would be inequitable to permit the party to retract. In order to create such an estoppel, the party estopped must have induced the other party to occupy a position that he would not have occupied but for such acts and declarations.

5. The conduct and representations must be such as would ordinarily lead to the results complained of. An act or declaration consistent with good faith, the injurious result of which could not have been foreseen or anticipated by any ordinary forecast of mind, would not operate as an estoppel, although injury may result therefrom to a third party.

6. But where one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on the belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things as existing at the same time.

7. This doctrine of estoppel concerns conscience and equity, and the party that would avail of it must, himself, have acted in good faith towards the party on whose conduct he relied, or it will not be held to constitute a bar to the assertion of the truth.

APPEAL from the Circuit Court of McLean county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action on a promissory note, purporting to have been signed by Warren Coman and Marston Hefner, payable to James Vandolah, the plaintiff.   Hefner alone was served with process, and pleaded the general issue, and also filed a special plea denying the execution of the note.   The cause was tried by the court, a jury having been waived, and judgment rendered for the plaintiff.   Hefner appeals.

Messrs. WILLIAMS & BURR, for the appellant.

Messrs. WELDON & BENJAMIN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

It is conceded, that the signature to the note in controversy is not the genuine signature of appellant.   The evidence abundantly establishes the fact that it is a forgery.   The single question presented, is, whether the appellant, by his declarations and conduct, is estopped from denying the execution of the note.

There can be no controversy about the facts established by the evidence.   The note upon which the suit was brought, bears date the 8th day of January, 1869, and purports to be signed by Warren Coman and the appellant, Marston Hefner. It was delivered to the appellee on or about the date of its execution, and was received by him in the usual course of business.   The appellant and the appellee both reside in the neighborhood of Lexington, and both of them had been engaged in the stock business with Coman, either as partners or as joint operators, to a very considerable extent, previous to, and subsequent to the making of the note now in controversy.   They were engaged in the same kind of operations, and their business necessarily threw them much together.

It is in evidence, that the appellee was at the house of the appellant, where Coman made his home, several times during the summer of 1869, to see Coman on his own business.

Although the note was delivered to the appellee about the time it bears date, and was made payable one day after date, yet it does not appear he ever called the attention of the appellant to it until some time in December, 1869. There is not the slightest evidence the appellant had any knowledge of the existence of the note, previous to that interview in December. It can not be said that anything the appellant did, induced the appellee to receive the note in the first instance, or induced him to hold it without instituting measures for its collection for that great length of time after its maturity.

The acts relied on to create an estoppel, occurred in December, after the note had been in possession of the appellee for about eleven months. At this time, both parties had become suspicious of Coman, and were fearful he would break up. In a conversation about his affairs, which occurred in a bank in Lexington, where the parties casually met, the appellee asked the appellant if he was aware he held Coman's note with his name on it, to which the appellant replied, that he was. The note was not present at that interview. There is but little conflict in the testimony of the parties as to what occurred at the interview in the bank. The appellant, however, insists, that when inquired of as to his knowledge of the note, he asked when the note was made, and on being informed, simply replied, that if the note was made then he must have signed it. This fact would not alter the law of the case. The appellant does not deny, that when he was asked if he was aware appellee held Coman's note with his name on it, he replied he was.

It is insisted, the appellee was misled to his injury by this declaration of the appellant, and was induced to sleep on his rights, and not to take any active measures to enforce the payment thereof, or even to secure his debt. It is apparent from the evidence, that Coman, at the time of the interview of the parties at the bank, was about to break up, and both parties were anxious to secure the amounts due them, or for which they were liable as the surety of Coman. It is admitted that

appellant, at that interview, told the appellee he thought the best way was not to press Coman, and that if he was let alone, he thought he would come out all right. It is insisted on the part of the appellee, that this declaration was made in bad faith, and made for the purpose of throwing appellee off his guard, with a view on the part of the appellant to obtain a better opportunity to secure his own claims, or those for which he was liable. On the contrary, the appellant insists it was simply an expression of an opinion on his part as to the best course to be pursued by both parties in reference to their relations with Coman, and was made in good faith, and for no sinister purpose. These are the main acts and declarations of the appellant, relied on to create the estoppel.

There can be no doubt, that if a party makes a declaration, or does any act to induce another to do an act he would not otherwise do, or to invest his capital on the faith of such declaration or act, he will be estopped to deny the truth of his declaration, or the just effect of his act. Such is the reasonable and just rule of the law. When a party is interrogated concerning a transaction which affects the interests of another, if he remains silent or answers falsely, and if the other is misled thereby, such party will be held bound by his silence, or his false declarations. Where a party is induced, by the acts or the declarations of another, to do an act he would not otherwise do, or omit to do an act he would have done but for the conduct of such party, and injury results therefrom, the party who induced such action, or non-action, must be held responsible for the consequences. If we apply these just principles in their fullest force to this transaction, would the admissions of the appellant, and the advice he gave the appellee concerning the best course to be pursued with reference to Coman, be sufficient in law to estop him from denying the execution of the note? This is the true inquiry in this case. As we have said, there is no pretence that the appellee was induced, by anything the appellant did, or said, to take the note in the first instance. If he is now to be estopped from denying the

execution of the note, and asserting the truth as against the appellee, it must be by the admissions made in the conversation in the bank, and the advice then given. No other acts are alleged, and none are proven.

The doctrine of estoppel *in pais* is to prevent injuries arising from acts or declarations which have been acted on in good faith, and which it would be inequitable to permit the party to retract. In order to create such an estoppel, the party estopped must have induced the other party to occupy a position he would not have occupied but for such acts and declarations. *Knoebel* v. *Kircher*, 33 Ill. 308.

The conduct and representations must be such as would ordinarily lead to the results complained of. An act or declaration consistent with good faith, the injurious result of which could not have been foreseen or anticipated by any ordinary forecast of mind, certainly ought not to operate as an estoppel, although injury may result therefrom to a third party.

Lord DENMAN, in *Pickard* v. *Sears*, 6 Adol. & El. 469, gave a very clear and accurate definition of this doctrine, where it is said, "The rule of law is clear, that where one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on the belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things as existing at the same time."

We are unable to discover in the evidence, any act or declaration on the part of the appellant, the ordinary effect of which would have been to mislead the appellee to his injury, or which, in fact, did mislead him, or cause him to do, or omit to do, anything that resulted in injury or loss. The evidence does not disclose, that the appellee was placed in any different, or worse position, by anything that was said or done by the appellant, or by any admission he made, or by any advice that was given. The appellee himself does not testify he omitted to do any single act, or that he omitted to take any measures towards the collection or securing of his debt by reason of, or

in consequence of, such admission or advice. There is nothing in the entire evidence that would warrant the appellee, under the circumstances, to fold his hands and do nothing towards the collection and the securing of the debt. He had reason to believe Coman was about to become bankrupt; that subject was thoroughly canvassed by the parties.

It is suggested, in argument, that the appellee knew the appellant was amply responsible for the debt, and relying on that fact, and the admissions made by the appellant, he was induced to make no effort to collect his debt. This fact can not avail to aid the appellee's cause. He knew Coman was in failing circumstances; that the note had been due in his hands from ten to eleven months; that, at most, appellant was only surety on the note, and good faith towards the appellant ought to have prompted him to make every possible effort to make or secure the debt out of the principal before he became utterly insolvent.

The doctrine of estoppel insisted upon, concerns conscience and equity, and the party that would avail of it must, himself, have acted in good faith towards the party on whose conduct he relied, or it will not be held to constitute a bar to the assertion of the truth. *Preston* v. *Mann*, 25 Conn. 118.

We do not discover, that the advice the appellant gave concerning the course to be pursued with reference to Coman, caused the appellee to change his position in the least, or even caused him to omit any act he would have done but for that advice. There is nothing in the evidence to show, but that the advice was given in the utmost good faith; but if it was not, and a sinister purpose could be imputed, still, if the appellee was not induced by such advice to change his position, or act differently from what he otherwise would have done, the appellant is not responsible. *Starr* v. *Lourtee*, 17 Md. 341.

The case of *Lancaster* v. *Balzell*, 7 Gill & John. 468, is a stronger case than the one before us. The action in that case was by the indorsee, against the maker of a promissory note.

The latter, when applied to by the plaintiff for payment, replied, it was all right; that he would show he was entitled to certain credits, and that he would then settle the note. The first indorsement, the name of the payee, was a forgery. It was held, these facts did not estop the maker from interposing that defense.

In *Weaver* v. *Morrison*, 16 Ind. 344, it was held, that where the maker was informed that the note had been already purchased, and promised the assignee to pay it, he was not estopped to contest its validity, on the ground that the promise did not induce the purchase.

The case of *The Bank* v. *Hazard*, 30 N. Y. 226, to which our attention has been called by the counsel for the appellee, is not in point on the question involved in this case.

The case of *Petre* v. *Leiter*, 21 Wend. 172, is not illustrative of the one we are considering. That case simply holds, that where a maker of a note is present when the note is about to be purchased by a third party for a valuable consideration, and acknowledges his liability therefor, he is estopped to deny he made the admission in ignorance of the true state of facts. The case states a correct principle of law, but the facts are totally different from those presented in this record, and the principle, therefore, can have no application. If it appeared, that by the admission insisted upon, the appellee had been induced to receive the note in the first instance, the case would be in point, and would be authority.

We have carefully examined every case to which our attention has been called by the counsel for the appellee, and we do not find any of them to be in conflict with the views we have here expressed. So far as the principles contained in any of those cases have any application to the facts of this case, they fully sustain the views announced.

After a careful consideration of the whole facts in the record, we are of opinion that the finding of the court was contrary to the law and the evidence, and for the reasons indicated, the judgment must be reversed and the cause remanded.

*Judgment reversed.*