Rifkin & Hart, Inc., Appellant, v. S. Buchsbaum & Company, Appellee.

Gen. No. 33,624.

474

Opinion filed May 14, 1930.

HERBERT J. FRIEDMAN and ALEC E. WEINROB, for appellant.

EISENDRATH, SOLOMON & BORDEN, for appellee; JEROME L. ABRAHAMS, of counsel.

MR. JUSTICE RYNER delivered the opinion of the court.

The plaintiff brought suit in the municipal court of Chicago to recover the sum of $803.12, representing the principal amount of a note for $773.25 together with $27.37 accrued interest and $2.50 protest fees.

The defendant admitted execution of the note, but claimed a set-off in the amount of $397.80. The defendant claimed that it, at the request of the plaintiff, delivered diamonds of the cost value of $497.25 to a third party, Bouer & Goldstein; that Bouer & Goldstein became bankrupt and that the defendant received a dividend of $99.45 to apply on its claim, leaving a balance due it from the plaintiff of $397.80.

The trial judge entered two judgments in the cause. The first was in favor of the plaintiff for the sum of $375.45, the amount admitted by the defendant to be due, together with costs of suit to the date of the entry of the judgment. Four months later the court entered a final judgment that the plaintiff take nothing by his suit and that the defendant recover costs from the plaintiff.

Upon the trial of the case the plaintiff introduced the note in evidence and rested its case.

Herbert Buchsbaum testified as a representative of the defendant. He said that he had known Joseph Rifkin, president of the plaintiff, since he was a boy; that in October, 1927, Rifkin said he wanted some

small diamonds and that the witness said he would let Rifkin have them at "exact cost, as an accommodation"; that Rifkin said to bill them to his firm, which the witness did; that later Rifkin said that the diamonds were for Bouer & Goldstein, a customer of his; that Rifkin requested that the diamonds be invoiced directly to Bouer & Goldstein for him, because by so doing immediate payment could be expected; that he told Rifkin that Bouer & Goldstein were competitors of the defendant and that he did not believe that their credit was any good; that Rifkin said that Bouer & Goldstein were financially responsible and that if the bill was sent direct to them for him he would see that the witness was paid. These diamonds were paid for.

The same witness further testified that in the following December Rifkin asked for some more diamonds to be delivered to Bouer & Goldstein upon the same basis as the previous transaction; that after the diamonds were delivered Rifkin telephoned asking "if he could have 90 days time on this lot." He also said that he did not know any of the officials of Bouer & Goldstein and that he told Rifkin that he could have 90 days. He further stated that, when he demanded payment of the bill from Rifkin, the latter said that there was nothing in writing to indicate that he had guaranteed payment of the debt.

Bouer & Goldstein became bankrupt. The defendant filed a claim in the bankruptcy court against the estate for $497.25. It was in the usual form except in the body of it were inserted the words:

"Also guarantee of Joseph Rifkin of New York." It was verified by Buchsbaum. He testified that he had some argument with the party who filled out the claim for him but that the above-quoted words were inserted because "I wanted it mentioned that Mr. Joseph Rifkin was responsible on this obligation because I did not want the bankruptcy court to under-

stand that I was the sole creditor.'' He also testified, without any objection being interposed, that he sold the diamonds to the plaintiff.

It was stipulated that a Miss Goldfarb, an employee of the defendant, would, if present, testify to the conversations to which Buchsbaum testified.

Rifkin denied that he told Buchsbaum that he would pay for the diamonds or that any invoice was ever made out to him.

Copies of certain sheets of the defendant's books were received in evidence, showing that the account in question was carried upon the defendant's books as an obligation of Bouer & Goldstein.

Rifkin also testified that he did not tell Buchsbaum that he would pay for the diamonds but said that he did not remember whether he said that he would see that the bill was paid. At the time of the transaction in question Bouer & Goldstein were indebted to either Rifkin or his firm to the extent of $14,000.

Each witness testified that his firm would receive no profit from the transaction if the invoice was paid. Rifkin admitted, in effect, that he told Buchsbaum he could not collect from the plaintiff because there was no written evidence of any obligation. He denied that he requested for himself 90 days' credit, and said that he asked that the credit be extended to Bouer & Goldstein.

The first contention of the plaintiff is that its obligation, if any, was as guarantor, and that it is not bound by its agreement because it contravened the provisions of the statute of frauds, it not having been reduced to writing. No pleading was filed in the trial court which presented this issue. Counsel for the defendant have, however, discussed the question as if it was a matter of review in this court. Buchsbaum testified that he sold the diamonds to the plaintiff and that the president requested 90 days' credit, which was granted. Rif-

kin, president of the plaintiff company, said that he did not agree to pay for the diamonds but could not remember whether he promised to see that they were paid for. The issue presented to the trial court was one of fact. Evidently he found the facts to be in accord with the testimony of Buchsbaum and we find nothing in the record which would warrant us in disturbing that finding.

The second and final proposition advanced on behalf of the plaintiff is that the defendant, by filing a claim in the bankruptcy proceeding and collecting a dividend, is estopped from claiming that the sale in question was made to the plaintiff. The case of *Sartain v. Dixie Coal & Iron Co.*, 150 Tenn. 633, 266 S. W. 313, is the strongest authority cited in support of this contention. The rule in Tennessee is stated in the syllabus to be that, ''Judicial estoppels are estoppels arising from sworn statements made in the course of judicial proceedings, generally in a former litigation, in the absence of a showing that the statement was made inadvertently or through mistake and are based on public policy and not upon prejudice to the adverse party, as in the case of equitable estoppels.''

The case of *Heimann v. Kinnare*, 92 Ill. App. 232, is also cited. The judgment of the court was reversed by the Supreme Court but on other grounds. The Appellate Court said in its opinion:

''It is further claimed that the court erred in allowing oral evidence to prove appellant's title to the land on which the accident happened. The evidence of which complaint is made is as to what appellant testified to on the former trial as to his ownership of the land. The evidence was competent, it being an admission made in open court, which he is estopped to deny. Greenleaf's Evidence, secs. 27 and 96; I Phillips on Evid. pp. 421 *et seq.*, 432 and 459; *Mason v. Park*, 3 Scam. 532; *Stribling v. Prettyman*, 57 Ill. 371–7; *Hensoldt v. Town of Petersburgh*, 63 Ill. 111.''

It will be noted that the question arose upon a second trial between the same parties with the issues the same. Under such a state of facts the rule has been stated to be:

"It may be laid down as a general rule that a party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding, where the later position is to the prejudice of the adverse party, and the parties and the questions involved are the same. And it has been held that an admission made at the first trial, if reduced to writing or incorporated into a record of the case, will be binding at another trial of the case, unless the presiding justice, in the exercise of his discretion, thinks proper to relieve the party from it." Ruling Case Law, Vol. 10, p. 702. The same authority, however, says: "But, *ex vi termini,* the rule underlying these propositions does not apply to suits in which the issues and the parties are not the same, nor to a position not precisely that taken on the prior proceeding," citing, among other authorities, *Snydacker v. Brosse,* 51 Ill. 357. In that case the Supreme Court of this State said:

"It is urged, that appellee, having sworn, in her affidavit, that the property was her husband's when she commenced the replevin suit, is estopped from now suing for any damage to it. Such an affidavit is, no doubt, strong evidence to prove that the property belonged to her husband, but at the same time it is not conclusive. She might, if she could, explain the affidavit, and show that the property belonged to her; and it is for the jury to say, from all the circumstances, whether she succeeded in the proof."

In the case of *Greenberg v. Stevens,* 114 Ill. App. 483, this court said:

"There was proof tending to show that in the course of bankruptcy proceedings instituted by appellee's

mother, appellee before bringing the present suit had sworn that a small part of the property in question belonged to her mother and not to herself. It is therefore contended that she is now estopped from claiming this part and that the damages are excessive, even after the remittitur, because they include the value of the part. Whatever may be the rule elsewhere, under the law of this State no estoppel arises from the mere fact that appellee had previously sworn the goods belonged to somebody else. To have such conduct on her part operate as an estoppel *in pais* appellants should have shown further that by reason thereof and in reliance thereon they had altered their position to their detriment,'' citing *Hefner v. Vandolah,* 57 Ill. 520 and *Snydacker v. Brosse,* 51 Ill. 357.

We think that the rule announced in the two cases just quoted from is applicable to the instant case. According to the testimony of Buchsbaum, Rifkin said he wanted to buy the diamonds but that he wanted the transaction to be conducted so that it would appear that the defendant was making the sale directly to Bouer & Goldstein. The reason for this, given by him, is a plausible one. Bouer & Goldstein were indebted to Rifkin's firm to the extent of $14,000. It is a matter of common knowledge that many debtors will delay or decline to make payment to their creditors but at the same time pay promptly to other parties.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

WILSON, P. J., concurs,
HOLDOM, J., not participating.