Marguerite Carroll, Administratrix of the Estate of Gregory Carroll, Deceased, Appellee, v. August Krause, Appellant.

Gen. No. 8,882.

Heard in this court at the February term, 1935. Opinion filed May 1, 1935.

JOSEPH F. BARTLEY and HARRY C. HEYL, both of Peoria, for appellant.

JOSEPH D. RYAN, of Chicago, FAULKNER & FAULKNER, of Joliet, and WALTER W. WINGET, of Peoria, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This is an action brought by appellee, as administratrix of the estate of Gregory Carroll, deceased, to recover damages for his alleged wrongful death. The declaration charged that on August 1, 1929, the deceased was riding as an invited guest in an automobile being driven in a northerly direction on State Highway No. 4 about a half a mile south of Joliet; that the defendant negligently and wrongfully permitted his truck to remain parked upon said highway in the nighttime without displaying a light at the rear and without taking any reasonable precautions to

guard the place where it was parked or to notify the public of its presence, and that as a direct result of said negligence, plaintiff's intestate sustained injuries from which he subsequently died. A plea of the general issue was filed, a trial had, resulting in a verdict in favor of the plaintiff for $10,000, upon which judgment was rendered, and the record is brought to this court for review by appeal.

The evidence discloses that on the evening of July 31, 1929, appellant accompanied by Ralph Wehnes was driving his Reo two-ton truck, which was loaded with tomatoes and sweet corn destined for the Chicago market along Route No. 4. He had proceeded to within approximately a mile south of Joliet when the right rear tire on his truck blew out. There was a gap in the pavement extending several hundred feet and it was just about the time the truck left the concrete pavement and entered the macadam that he had his tire trouble. Appellant proceeded to stop his truck and when it came to a stop the right wheels thereof were near the edge of the macadam and the left wheels not far from the center thereof. The truck was jacked up and the tire and rim taken off and it was in that position when Gerald Staab, a brother-in-law of appellant, came along in another truck and a part of the load from appellant's truck was transferred to the truck being driven by Staab. An unsuccessful effort was made to use a spare tire that Staab carried and thereafter appellant accompanied Staab in his truck, intending to stop at Joliet, buy a new tire and return. Wehnes was left with the truck and it was while appellant was gone that an Essex coach driven by Daniel Ferry and occupied by Gregory Carroll, the deceased, and John Sexton approached from the south and the Ferry car struck the left rear corner of appellant's truck. As a result of this collision Carroll was thrown from the car and sustained injuries from which it is contended by appellee that he subsequently died.

It is insisted by appellant that reversible error was committed by the trial court in the admission of evidence. Ralph Wehnes, who accompanied appellant in the truck on the evening in question, was called to testify on behalf of appellant, and during his direct examination testified that a day or two before the accident he installed a new combination stop and tail light on the truck which he observed burning before and after the collision; that before their collision and while they were near Dwight, they had had tire trouble and used their spare tire. He told of their unsuccessful effort to use the spare tire on the truck of appellant's brother-in-law and of appellant's leaving for Joliet to buy a new tire. He further testified that before appellant left and they were working on the truck approximately 15 or 20 cars passed, two of which he observed passed abreast; that after appellant left, he, Wehnes, walked to the rear of the truck, smoked a cigarette, stood there a few minutes and then got into the cab on the left side of which was a rear-view mirror; that his attention was attracted to a car coming down the road making a lot of noise, and looking into the mirror he could see the car in which deceased was riding approaching from the rear. He observed it as it left the pavement and testified that it only had one headlight burning. Upon cross-examination, counsel for appellee sought to lay a foundation to impeach this witness by interrogating him concerning his testimony before the coroner at the inquest held over the body of appellee's intestate. The witness stated he had testified at the inquest and counsel then inquired if he had read the testimony that he gave there and the witness answered in the negative. Counsel then asked him: "Isn't it a fact that you never made any mention of the fact that there was but one light on this Essex coach in the testimony before the coroner?" The witness answered that he didn't remember and stated that he didn't recall whether the

following question was asked by the coroner: "Were there any cars going by you, north, passing the same direction you were going while he was there with you?" And stated that he didn't remember answering the question by stating: "I should judge half a dozen." He further testified that he didn't remember being asked by the coroner: "What did you do while Mr. Krause was up town?" or answering: "Stood at the back of the car for fifteen or twenty minutes and after that I went and sat in the cab." The record then discloses that counsel for appellee, addressing the witness, then stated: "This question asked you by the coroner: 'Did you notice this car coming before the crash?' Answer: 'It seemed to make a good deal of noise, that was what attracted my attention and I looked back.' Now were these questions asked and did you make these answers?" The witness answered: "I don't remember."

The record then discloses that counsel for appellee then asked the witness the following: "Question: 'Where was the car with reference to the rear of your truck when you first saw it?' Answer: 'How far back you mean.' Question: 'Yes.' Answer: 'Two hundred feet.' Question: 'How fast.' Answer: 'Rather fast, high rate of speed I would judge.' Question: 'That because of the noise?' Answer: 'Yes.' Question: 'What occurred then.' Answer: 'Well, I saw the car and crashed the left rear corner of Mr. Krause's truck: got the right corner and the other car, swung the car sideways and skidded twenty to thirty feet and went off sideways.' Were these latter questions asked and these answers given by you?" The witness replied that he didn't remember. Counsel for appellee then asked him: "When you read the transcript of the testimony taken at the coroner's inquest, which counsel furnished you, you read all of your testimony, didn't you?" And the witness answered in the affirmative. Counsel then asked him: "Now did

you find one syllable in there about any mention being made about there being but one light on the Essex coach?'' Objections to all these questions were interposed and overruled. To this last question counsel for appellant again objected, stating that it was not proper cross-examination other than for impeachment purposes. To this statement, counsel for appellee replied: ''That is just what this is.'' The record then discloses the following: ''Mr. Heyl: You are not impeaching him with the record. Mr. Ryan: I am laying a beautiful foundation for it. Mr. Heyl: I object to counsel's statement of his ability to lay a beautiful foundation for anything. The Court: Let's go ahead. Mr. Ryan: Your Honor, I have subpoenaed the original record from Joliet, and I thought counsel would concede, when they have a copy of what we all know is an original record, and that both sides have been using it here, that these questions and answers are the same as contained in the original record. They are not admitting that; they are not making that admission. Mr. Bartley: We object to that statement as improper and prejudicial. Mr. Ryan: I will call one of you to the stand and make you admit it. Mr. Bartley: We object to that statement as improper and prejudicial. The Court: Sustained. Mr. Ryan: All right. I would like to withdraw the witness for a minute and put Mr. Bartley on the stand. The Court: All right.''

In compliance with the request of counsel for appellee, Mr. Wehnes was thereupon, in the midst of his cross-examination, withdrawn from the stand and Mr. Bartley, one of the attorneys for appellant, was sworn and was examined by Mr. Ryan, the attorney for appellee, and the record discloses that in response to Mr. Ryan's questions, Mr. Bartley testified that he was ''one of the attorneys trying this case. I haven't a copy of the coroner's record. Mr. Heyl (Mr. Bartley's associate) has something that purports to be a

copy. I do not know that the copy I have purports to be a carbon copy. No one has testified to that under oath. I have never seen the original. I have never noticed the signature of the coroner on the copy I have.'' The record then discloses that the following took place: ''Mr. Ryan: Will you look at it. Mr. Heyl, will you let counsel look at it and see if it bears the coroner's signature?'' Thereupon Mr. Heyl handed a document to the witness. Mr. Heyl then stated: ''If the court please, I want to object to this demonstration before the jury and insist—and object to any further continuation of it. This serves no purpose, it is wholly immaterial and there has never been any objection made so far as—except as to the proper foundation or the materiality of the evidence or the propriety, or the relevancy of the questions that have been asked these men. Mr. Ryan: That is not the fact. Mr. Bartley made the point that I didn't have the original here, and I stated that I have it outside the court room. Mr. Heyl: Then I insist it is prejudicial for counsel to call counsel representing the defendant to the stand when he has what he is attempting to prove by counsel on the outside of the court room. Mr. Ryan: You made no objection to my calling him. Mr. Heyl: I am objecting now. Mr. Ryan: Mr. Bartley isn't objecting to answering the question. Mr. Heyl: I certainly have a right to object. Mr. Ryan: I can't put it in evidence until I reach my side again. Mr. Heyl: I understand you certainly haven't any right to call a witness on our side of the case, have you? Mr. Ryan (Q.): I will just ask Mr. Bartley if the copy he has in his possession does not bear the signature of the coroner? Mr. Heyl: I am objecting to that as not proper. Mr. Ryan: Will you wait until I finish? Mr. Heyl: And improper and prejudicial before the jury. The Court: Finish the question, please. Mr. Ryan (Q.): If that record that you hold in your hand, which has been given to you, bears the

signature of the coroner, does it not? Mr. Heyl: I object to that as not proper at any stage of the proceeding and an improper demonstration before the jury and counsel knows that it is. The Court: Let me ask counsel something. What is the purpose of proving whether that is a copy? Mr. Ryan: I want to say that the reason that I am asking the question as to whether it is an identical duplicate copy of the coroner's inquest, counsel has the same identical kind of a copy in his possession, not only signed by the coroner, but certified to under oath by the coroner's stenographer. Mr. Heyl: I object to the statement of counsel as not proper. Mr. Ryan: I will prove it if you will keep still a minute. Mr. Heyl: I am not going to keep still unless the Court makes me keep still. Mr. Ryan: I didn't mean it in that sense. Mr. Heyl: I insist it isn't proper at this time; this is the defendant's case, and if he has anything to offer, he should wait until he gets to the rebuttal. The Court: Objection sustained. Mr. Ryan (Q.): Do you object to answering, Mr. Bartley? A. I don't object to answering any question at the proper time. Q. Are you objecting to my asking you if that bears the coroner's signature? A. I don't know the coroner's signature. Mr. Heyl: I object to any further examination of this witness. Mr. Ryan (Q.): Does it purport— A. I don't know what it purports. If it does, it will show for itself; you know that very well. Mr. Ryan: That is all. Mr. Heyl: Now, I object to any further horse play of this kind on the part of counsel. Mr. Ryan: Please take your seat. Mr. Ryan: I would like to have the witness instructed that he should not discuss any part of the case with counsel during the intermission. Mr. Heyl: I object to that statement. Mr. Ryan: I want to add to that, particularly when there is a rule entered excluding the witness. I am not saying that he is going to; I am simply asking that he be instructed not to. The Court: The witness will please refrain

from discussing the case during the recess with any-one; do you understand that? The Witness: Yes."

Subsequently Mr. Wehnes was recalled by counsel for appellee for further cross-examination and the record discloses that the following took place: "Mr. Wehnes, again calling your attention to your testimony at the Coroner's inquest previously discussed, at the bottom of page 19, do you remember Attorney Faulkner asking this question relative to the speed of the Essex as it approached your truck—Mr. Wehnes, the first questions are just preliminary, but these questions are asked: 'You tell the jury you can tell how fast the speed of this car was, approaching you?' Answer: 'No.' Attorney Barr spoke up and said, 'He said he could not.' . . . Q. 'Dr. Kingston: He said he could not.' 'Mr. Faulkner: He said going at a high rate of speed.' Then did you speak up and say, 'From the sound of the car.' Then Attorney Faulkner: 'No matter; in fact he has been driving long enough to know you can't fix the rate of speed with the lights, don't you?' And did you answer, 'Yes'? Mr. Heyl: I object to that as incompetent, improper and immaterial, not proper cross-examination, and not a proper subject to inquire for impeachment, and not a proper impeaching question, and immaterial, and for the further reason that there are several questions and answers embodied in the question and answer. Mr. Ryan: Your Honor please, the preliminary questions were read just to get the connection. This last question I have in mind and that I wish to call his attention to; reference was then made to the fact that he couldn't tell the rate of speed that the car was coming on account of the lights—not light. I desire to ask if that question was not asked and if he said 'Yes' to it. Mr. Heyl: And the further objection that the statement of counsel is not proper, and emphasizes some particular point, which is not proper under any circumstances, and not a proper cross-examination. The Court: He may an-

swer the question. A. I don't remember whether I did or not.''

In rebuttal counsel for appellee offered in evidence the entire inquest proceedings held by the coroner on the body of appellee's intestate. This document consists of 33 pages and was identified by Willard G. Blood, who testified that he was deputy coroner of Will county, that he procured it from the coroner's files and identified the signatures thereon as those of E. A. Kingston, the coroner, and Grace S. Thomas, the coroner's stenographer. Over objection of counsel for appellant, counsel for appellee then read to the jury the following, viz.:

"State of Illinois, ⎱ ss.    CORONER'S INQUEST
    Will County, ⎰

"Held at 617 Clinton Street in the Town of Joliet in the County of Will, and State of Illinois on Saturday, the 10th day of August in the year of our Lord, one thousand nine hundred and twenty-nine on the body of Gregory Carroll, deceased.

PRESENT:

E. A. Kingston
CORONER.

A. B. Jones ⎫
E. E. Pierce ⎪
Ellis Schofield ⎬ JURY OF INQUEST
Al Mau ⎪
Nick Toth ⎪
Miles Moriarty ⎭

Attest:
A. B. Jones    FOREMAN

"BE IT REMEMBERED, That at an inquisition made before the undersigned, E. A. Kingston, Coroner of said County, at Joliet, Illinois, in said County, on the 10th day of August A. D. 1929, upon the body of Gregory Carroll by a jury sworn according to law, to inquire how the said body came to its death, the

witnesses then and there sworn, testified as follows, to-wit:

"Witnesses as hereinafter named being duly sworn, said: FRED WEHNES called as a witness in the above matter, being first duly sworn, was examined in chief by Dr. E. A. Kingston, Coroner of Will County, testified as follows:

"Q—Your name and residence? A—Ralph Wehnes, Mossville, Illinois.

"Q—And how close were you to the right hand side of the road, the east side of the road when your car came to a stop?

"A—Do you mean to the edge of the macadam? Q—Yes. A—A couple of feet.

"Q—When you looked out, you were riding on the right hand side?

"A—Yes.

"Q—Do you mean a couple of feet from the running board? A—The wheel was about two feet from the edge though.

"Q—Were there any cars going by you, north, passing the same direction you were going, while he was there with you? A—I judge a half a dozen.

"Q—What did you do while Mr. Kruger was up town?

"A—Stood at the back of the car for fifteen or twenty minutes and after that I went and sat in the cab.

"Q—Did you notice this car coming before the crash? A—I did.

"Q—What drew your attention to the car? A—It seemed to make a good deal of noise, that was what attracted my attention and I looked back.

"Q—Where was the car with reference to the rear of your truck when you first saw it? A—How far back you mean?

"Q—Yes? A—Two hundred feet.

"Q—How fast? A—Rather fast. High rate of speed I would judge.

"Q—That because of the noise? A—Yes.

"Q—What occurred then? A—Well I saw the car and crashed the left rear corner of Mr. Krause's truck; got the right corner and the other car, swung the car sideways and skidded twenty to thirty feet and went off sideways.

"Q—Do you tell this Jury you can tell how fast the speed of this car was approaching you? A—No.

"Atty. Faulkner—No matter, in fact he has been driving long enough to know you can't fix the rate of speed with the lights don't you? A—Yes.

"State of Illinois }
    County of Will } ss.

"I hereby certify that the above and foregoing is a true and correct transcript of the testimony of several witnesses who were duly sworn and testified at an inquest on the body of Gregory Carroll held on the body of Gregory Carroll on the 10th day of August A. D. 1929; and is a true and correct statement of the testimony of each of the several witnesses who testified at said inquest.

August 10th, 1929.               Grace S. Thomas.

"I, E. A. Kingston, Coroner of Will County, State of Illinois, do hereby certify that the foregoing is the testimony given before the jury in an inquest by me held on the body of Gregory Carroll in the town of Joliet, County of Will and State of Illinois. And the said testimony is the same as it was then and there by me reduced to writing, and has been subscribed by the witnesses giving the same, according to law.

"GIVEN UNDER MY HAND and seal at Joliet, this 10th day of August A. D. 1929.

E. A. Kingston    (SEAL)
CORONER OF SAID WILL COUNTY."

Section 18 of chapter 31, Cahill's Illinois Rev. Statutes, 1933, ¶ 19, provides that the coroner shall cause the testimony of each witness who may be sworn and

examined at any inquest to be written out and signed by said witness, together with his occupation and place of residence, which testimony shall be filed by said coroner in his office and carefully preserved: provided, the coroner may cause the testimony of such witnesses to be taken in shorthand minutes and transcribed by a competent person, who shall certify that the transcript so taken and transcribed by him is a true and correct copy of the original minutes taken at said inquest and is a true and correct statement of the testimony of each of the several witnesses who have testified at such inquest, and provided further that whenever the testimony of the several witnesses at such inquest shall have been taken in shorthand minutes and transcribed as above provided for, the several witnesses shall not be required to sign such transcript or other statement of his testimony.

The coroner's certificate, which was read to the jury, recites that the testimony of the several witnesses was by him reduced to writing and subscribed by the witness giving the same. This was not true. The testimony of Wehnes was not signed by him nor was the testimony of any of the other witnesses who testified at the coroner's inquest subscribed by such witness. The provisions of the statute are that when the testimony is taken in shorthand minutes and transcribed as provided therein, the several witnesses shall not be required to sign their name thereto. In order to obviate the necessity of having the witness subscribe his name thereto, the statute says that the testimony must be taken in shorthand minutes and transcribed by a competent person and that such competent person shall certify first that the transcript so taken and transcribed is a true and correct copy of the original minutes taken at the inquest and second that the transcript is a true and correct statement of the testimony of each of the several witnesses. The

certificate of Grace S. Thomas is "that the above and foregoing" is a true and correct transcript of the testimony of several witnesses who testified at the inquest and is a true and correct statement of the testimony of each of such witnesses. She does not certify that the shorthand minutes were made by her or that she made the transcript thereof, or that the transcript is a true and correct copy of the original minutes. The evidence does disclose that Grace S. Thomas was the coroner's stenographer, but she was not called as a witness and did not testify and there is no proof that she is a competent stenographer. From all that appears in the certificate, someone other than Grace S. Thomas might have taken the testimony of Wehnes at the coroner's inquest and still another person might have transcribed such testimony. The certificate does not comply with the statutory provisions and reversible error was committed by the trial court in overruling appellant's objections thereto and permitting the portions thereof heretofore set out to be read to the jury.

Counsel for appellee insist that the objections made by counsel for appellant were general objections only, and as the document was one required by law to be kept, it was therefore admissible in evidence as a public document for the purpose of impeaching Wehnes. The record discloses that counsel for appellant objected to practically every question asked in connection with counsel for appellee's attempt to impeach Wehnes and when the document identified by the deputy coroner was offered in evidence, counsel for appellant specifically objected to its admission on the ground that the evidence of Wehnes as appeared therein did not purport to be signed by him and further that no proper foundation had been laid for the admission of the document offered. An examination of the exhibit discloses that the purported testimony

of Wehnes was not signed by him and an examination of the certificate of Grace S. Richmond discloses that the statutory provisions were not complied with. In *Illinois Cent. R. Co. v. Wade,* 206 Ill. 523, the court outlined the proper procedure to be followed where it is sought to impeach a witness and in its opinion said: "When it is desired to impeach a witness by proof of oral statements made by him out of court contradictory upon a material point of his testimony given from the witness stand, it is requisite that a foundation for the introduction of such oral statements be made by asking the witness if he did not, at a given time and place, in the presence of specified persons, make the supposed contradictory statements; but where the supposed contradictory statements were reduced to writing by the witness, or signed by him, a sufficient foundation for the introduction of the writing is laid by showing the paper to the witness, allowing him to inspect it and to read it if he desires, and proving by him, or others, that the signature thereto is his genuine signature." In the instant case the document sought to be used by appellee to impeach Wehnes was neither signed by him nor were his supposed contradictory statements reduced to writing by him or preserved in the method provided by the statute, and therefore it was error for the court to admit it in evidence.

In *Consolidated Ice Machine Co. v. Keifer,* 134 Ill. 481, the court held that testimony taken before a coroner was competent for impeaching purposes and in its opinion the court said: "Their deposition before the coroner had been read to and signed by these witnesses, and on cross-examination their attention had been particularly directed thereto. This evidence was offered by way of impeachment and was entirely competent. The mode of examination seems to have conformed to the rule in reference to examinations in

respect of written instruments.'' It has always been the law in this State that evidence taken before a coroner is inadmissible as primary evidence and can only be used for impeachment purposes. In *Pittsburgh, C. & St. L. Ry. Co. v. McGrath*, 115 Ill. 172, it was so held, the court stating: ''The provision of our statute simply is, 'which testimony (before coroner) shall be filed with said coroner in his office and carefully preserved,'—there being no implication, as in the English statute, that the inquisition is for use in court.'' It is therefore clear that the provisions of our statute for the manner of preserving such testimony are not designed for the purpose of subsequently using that testimony as primary evidence in court proceedings and the fact that the statute prescribes a method of preserving testimony and makes that document accessible to the public does not make it admissible without a compliance with established rules of procedure.

The record in the instant case discloses that Wehnes was appellant's eyewitness to the collision. He had testified that the car in which appellee's intestate was riding had a single headlight; that the tail light on defendant's truck was a new one installed and tested by him a couple of days before the collision and that it was lighted before and after the collision; that appellant's truck was parked on the highway as far to the east side thereof as the contour of the shoulder would permit; that before the collision and while the truck was standing on the highway about 20 vehicles passed the truck and on one occasion two cars passed abreast of the truck and even with it on the macadam portion of the highway. Appellee, in attempting to discredit Wehnes, read from what purported to be his testimony before the coroner's jury, which tended to disclose that he there testified that there were two headlights on the car in which deceased was riding

and that the truck was parked a couple of feet away from the east edge of the macadam portion of the highway and that half a dozen vehicles passed the truck while it was standing, instead of twenty. Furthermore, the court, in its instructions, advised the jury that one mode of impeaching a witness was by showing that he had made different and contradictory statements on a material point on former occasions and that if it appeared from the evidence in this case that any witness has been impeached in this manner, the jury had a right to take into consideration such impeachment in determining the value of the testimony of such witness or witnesses in connection with all the other facts and circumstances in evidence. The only witness to whom this instruction could apply was Wehnes. The court further gave to the jury an instruction to the effect that if they believed from the evidence that any witness had knowingly and wilfully sworn falsely to any matter material to the issues in the case, that then they were at liberty to disregard the entire testimony of such witness, except in so far as it had been corroborated. In view of the entire record in this case we are clearly of the opinion that the error of the trial court in admitting the proceedings had before the coroner was so prejudicial as to require a reversal of this judgment. *Overtoom v. Chicago & E. I. R. Co.,* 181 Ill. 323.

Counsel for appellee cite the *Overtoom* case, *supra,* and insist that the court there held that the transcript of the testimony of a witness who testified before the coroner was the best evidence of what he testified to and that in the instant case he was following the procedure there approved. In the *Overtoom* case it was sought to prove the testimony of a witness who testified before the coroner by a stenographer who was called to testify from his notes taken at the coroner's hearing. This was while the coroner's act provided that the testimony of a witness at the inquest should

be written out and signed by the witness and before the amendment which authorized the coroner to have the testimony taken by a stenographer and transcribed. The Supreme Court there held that the stenographer's notes or the transcript from them were incompetent and in its opinion said: "The testimony of Silverman (the party sought to be impeached) was taken by the coroner, and as the statute required it, we will presume it was written out and signed by the witness and filed and preserved in the office of the coroner. Had his deposition thus taken been produced and Silverman's attention properly directed to it, it could have been used to contradict him. That deposition was the best evidence and the stenographer's notes were not admissible." What the court did in the *Overtoom* case was to indulge in the presumption, in the absence of any proof to the contrary, that the coroner did his statutory duty, and held that the signed statement of a witness was preferred to the notes of a stenographer.

In *People v. Parker,* 284 Ill. 272, the defendant sought to impeach a witness who had testified on behalf of the People by calling the stenographer who took the previous testimony of the witness before the coroner's jury. It developed that the stenographer had not taken down the questions and answers verbatim nor written out the statements of the witness exactly as they were made; that sometimes the coroner would have a witness repeat a statement and at other times the coroner would sum up in his own language the substance of the testimony which he desired the stenographer to take down in shorthand, and as the stenographer was not prepared to swear whether the testimony she had taken down purporting to be that of the witness was in the witness' own language or in the language of the coroner, it was held that the trial court properly refused to permit the stenographer to testify from her stenographic notes.

It follows that in the instant case it was clearly error to permit the testimony of Wehnes to be read to the jury when the only authentication thereof was the defective certificate of Grace S. Richmond.

In Jones Commentaries on Evidence, vol. 5, par. 847, page 214 *et seq.*, the author, after stating that witnesses may be impeached by producing their written statements, e. g., letters, affidavits, depositions, which are inconsistent with the testimony given at the trial and that by written statements is meant not only statements written by the witness, but such as may have been written by others and signed by him, then proceeds: ''The difference in the mode of laying the foundation is that in case the statements are oral, the warning is given by asking the witness, in substance and effect, if he did not at a given time and place in the presence of or to a person or persons specified make the alleged contradictory statements. In case the statements are in writing and unsubscribed, the paper must be shown or read to the witness and marked for identification, and, if subscribed, the signature, and, in case he so demands, the papers must be shown him. The attention of a witness having been thus called to the contradictory statements, they may be proven and introduced in evidence in the regular course of the trial.'' This is the procedure followed and approved in this State. *Illinois Cent. R. Co. v. Wade, supra; Briggs v. People,* 219 Ill. 330, where it was held that where a witness for the People had positively identified the accused as the party who had committed the crime for which he was being tried, that it was proper for the defendant to show that such witness, at the coroner's inquest, made statements to the effect that he was not then positive of such identification and it was there further held that counsel was not restricted to the coroner's records, for proof as to what was testified to by witnesses before the coroner.

It is further insisted that the court erred in admitting three photographs in evidence. The record discloses that James McKeon was called as a witness on behalf of appellee. He testified that on the morning of August 1, 1929, he was a deputy sheriff of Will county and received a call to go and did go to the place of the accident. He further testified that he was familiar with the highway there and thought he would recognize a photograph of it. Three photographs were thereupon marked for identification and McKeon testified that Exhibit one was Route 4-A facing north and that it showed the shoulder of the road and macadam at the place where the truck was standing; that Exhibit two was facing south and Exhibit three facing east. Counsel for appellee then asked him: ''Now, do these three photographs correctly and accurately portray the physical conditions as they existed on the night of the accident?'' Over counsel for appellant's objection, the witness answered: ''Yes,'' and thereupon, although objected to, the three photographs were admitted in evidence. Two of the photographs show cars traveling or parked on the highway and all three show a brick, which appears from the photographs to be in approximately the center of the macadam portion of the highway. After the photographs were admitted in evidence, Ferry, who was the driver of the car in which the deceased was riding, was called as a witness and testified that he was present the next day after the accident when the photographs were taken; that his employer and Mr. Sexton were also present and he was asked about where the truck stood and he thereupon placed a brick in the highway at the place where he thought the west wheels of the truck were standing the previous night, and that this is the brick which appears in the several photographs. In our opinion these photographs were inadmissible under the evidence found in this record at the time they were offered in evidence and

appellant's objections thereto should have been sustained.  *Burns v. Salyers,* 270 Ill. App. 46, and cases there cited.  *Stewart v. St. Paul City R. Co.,* 78 Minn. 110; *Nunnelley v. Muth,* 195 Ky. 352.

It is further insisted by appellant that it was improper for counsel for appellee to suspend the cross-examination of Mr. Wehnes and call Mr. Bartley, counsel for appellant, to the witness stand.  We have heretofore set forth at length just what the record discloses in this regard, and as the case must be submitted to another jury, a different procedure will likely be followed.  And for the same reason we need not comment upon the effect which may have been produced upon the jury by what occurred during the cross-examination of the witness David W. Lucas. The record does disclose that Mr. Lucas had testified that several days after the accident he talked to someone about the case.  Counsel for appellee then inquired: "You mean someone came to see you about it?"  The witness answered in the affirmative and he was then asked: "Who was it?" and over the objection of counsel for appellant answered that it was an insurance man.  Counsel again asked him: "Who came to see you?" and he replied he didn't know his name.  Counsel then asked: "Didn't he give you his name?" and the witness replied that he may have given it, but he didn't then recall it.  As the case must be submitted to another jury, this error will not be likely to occur again.

For the errors in the reception of evidence, the judgment of the circuit court is reversed and the cause remanded for another trial.

*Reversed and remanded.*