Marguerite Carroll, Administratrix of Estate of Gregory Carroll, Deceased, Appellee, v. August Krause, Appellant.

Gen. No. 9,262.

554

Opinion filed May 10, 1938.

Joseph F. Bartley and Harry C. Heyl, both of Peoria, for appellant.

Joseph D. Ryan, of Chicago, Faulkner & Faulkner, of Joliet, and Walter Winget, of Peoria, for appellee.

Mr. Justice Wolfe delivered the opinion of the court.

This is an action to recover damages for the death of Gregory Carroll resulting from a collision of an automobile (in which he was riding as a guest) and the defendant's truck on State Highway No. 4, a short distance south of Joliet, between the hours of 12:00 and 1:00 o'clock a. m., on August 1, 1929. In a former trial there was a verdict and judgment for the plaintiff, which judgment was reversed and a new trial ordered by this court for errors in the evidence. (*Carroll v. Krause*, 280 Ill. App. 52.) A second trial resulted in a verdict and judgment for the plaintiff, and the defendant appealed to this court. Both trials were in the circuit court of Peoria county.

In our former opinion we held that the transcript of testimony, taken before the coroner at the inquest, was inadmissible as evidence for the purpose of impeachment, because the certificate to the transcript did not show that the testimony was reduced to writing as required by the terms of section 18 of ch. 31, Cahill's Ill. St. 1933, ¶ 19. Before the second trial, the plaintiff, by oral examination, took the depositions of Dr. A. A. Kingston, the coroner, and Mrs. Grace Thomas, the stenographer, to prove that the testimony given at the inquest was taken in shorthand and transcribed by a competent person. The attorney for the defendant was present when the depositions were taken and took part in the examination of the deponents.

At the trial the depositions were opened in the presence of counsel. A hearing was had before the judge (in the absence of the jury) on the question of the ad-

missibility of the testimony in the depositions as competent evidence for the jury. At this hearing the defendant's counsel made various objections to the competency of the depositions which were allowed to stand as objections to the admission of the depositions when offered in evidence on rebuttal by the plaintiff, as impeachment of Ralph Wehnes, a witness who had testified at the former trial for the defendant.

Dr. Kingston stated in substance, that he presided at the inquest on the body of Gregory Carroll; that a stenographer, Mrs. Grace Thomas, wrote down the testimony of each witness at the inquest; that he thereafter certified to the correctness of the transcript of the testimony in a form not in conformity with the statute; that he had with him an amended coroner's certificate and an amended certificate of the stenographer, both of which he intended to attach to the original transcript of the testimony.

Mrs. Thomas (whose qualifications as a competent person to take the testimony of the witnesses at the inquest in shorthand and transcribe them as required by statute, is not questioned) stated that she took the testimony of the witnesses and transcribed the same, and that she had with her an amended certificate made by her which was to be attached to the original transcript.

The testimony given before the coroner was admitted on the taking of the deposition of Dr. Kingston as Exhibit 1, and it forms a part of his deposition. When the deposition of Mrs. Thomas was taken, the plaintiff's attorney had before him the transcript of the testimony taken at the inquest. The testimony of Wehnes at the inquest was embodied in the Thomas deposition by the attorney's direct interrogatories, seriatim, whether Wehnes, at the inquest, had been asked and answered the questions as they appeared in the transcript. To each question Mrs. Thomas an-

swered, "Yes, he did." Attorneys for the defendant, when the depositions were taken, made objections to the introduction of the transcript and cross-examined the deponents. Mrs. Thomas stated that she was at the inquest and acted as stenographer on behalf of the coroner; that she took the testimony which was given at the inquest in shorthand and later transcribed it; that the transcript contained the true and correct statement of each of the several witnesses who testified at the inquest and whose evidence is found in the transcript. On cross-examination she testified, in substance: "When I answered those various questions as what was asked and what was answered at the inquest, I was simply checking what is typed on plaintiff's Exhibit No. 1, and answered in the affirmative to those questions as I looked at plaintiff's Exhibit No. 1, because that is the true and original copy of everything that transpired at the inquest and I know it was the original answers and questions."

At the hearing before the trial judge, the amended certificates to the transcript and both depositions were admitted before the court, as containing competent evidence to be used at the trial before the jury for impeachment purposes. The plaintiff offered to introduce the entire depositions of Dr. Kingston and Mrs. Thomas before the jury, to which the defendant objected. The plaintiff then offered certain parts of Mrs. Thomas' deposition before the jury as impeachment of defendant's witness Wehnes. The court held that the offer was proper. The deposition of Dr. Kingston was not offered in evidence before the jury. Exhibit No. 1 was not offered as evidence on the trial. It is clear from a reading of the discussion and rulings heard and made before the court, that the judge understood that the deponent Thomas in her deposition, testified that Wehnes had made the answers as they appear in Exhibit No. 1 and in her deposition.

At the hearing before the trial judge, the plaintiff's attorney read extracts from the deposition of Mrs. Thomas, which he intended to offer as evidence on the trial.

After considerable discussion as to what part of the depositions should be offered, the trial was resumed. Mr. Ryan read questions and answers to the jury from the deposition, in the same form as they were read before the judge at the hearing. It is contended that the impeaching evidence so brought before the jury consists of self-serving questions and answers of the attorney who examined Mrs. Thomas when her deposition was taken, and there was no proof before the jury that Wehnes had testified at the inquest as shown by the questions and answers read from the deposition. It is also contended that if that part of the deposition which states that Wehnes had been asked and had answered the questions at the inquest, that had been read to the jury, the defendant would have offered in evidence the cross-examination of Mrs. Thomas, as it appears in the deposition, for the purpose of discrediting or weakening her affirmative statement that the questions and answers were part of Wehnes' testimony before the coroner.

The transcript of the testimony taken at the inquest was the best evidence of Wehnes' testimony at the inquest. (*Overtoom .v. Chicago & E. I. R. Co.*, 181 Ill. 323, cited in *Carroll v. Krause, supra.* See also *Briggs v. People,* 219 Ill. 330; *Goldstein v. Chicago City Ry. Co.,* 210 Ill. App. 48.) No objection was made that Mrs. Thomas had no independent recollection of Wehnes' testimony before the coroner. It is not shown that the amended certificates to the transcript are irregular or not in conformity to the statute, nor that the amendments were improperly made. There was no objection that the part of the deposition of Mrs. Thomas offered and received in evidence, was not the best evidence. The defendant had the right to offer the whole or any

part of the deposition of Mrs. Thomas in evidence as he saw fit. Having taken his chances on a verdict on the record as made, we are of the opinion that the defendant is not in a position to ask for a new trial. We fail to see that through the admission of this evidence at the trial, there has been returned a verdict prejudicial to the defendant. If the jury did not think or believe that Wehnes had testified at the inquest as shown by the questions and answers in the deposition, no harm was done to the defendant. If they did believe that he had so testified, it is in accordance with what is proven by the uncontradicted testimony by the deposition of Mrs. Thomas.

It is also contended that the evidence toward which the impeaching testimony is directed was brought out on cross-examination of Wehnes at the trial, and therefore not subject to impeachment by the plaintiff. Reference is made to our former opinion after the first trial of this case. (280 Ill. App. 52.) It is clear from that opinion that the position of the truck on the highway and if the rear lamp on the truck was lighted at the time of the collision, were material issues in the case. In his direct evidence on the second trial, Wehnes testified fully on the question of whether the lamp was lighted; of the width of the macadam; that the truck, after its rear tire blew out, was stopped on the east side of the macadam, the right wheels of the truck then being on the right side of the road; that the right wheels of the truck were on the east edge of the macadam; that he went to the rear of the truck while it was standing in that place, stayed there a few minutes and then returned to the cab of the truck; that about 18 feet of space of the macadam was open for travel west of the truck. He testified, "I would say 15 or 20 cars passed in both directions on the west side of the truck; I remember a car and a truck passed abreast. The deputies asked me to move the truck and I told them that I could not move it, and about eight

men got alongside of the truck and held it while I moved it; that the shoulder of the road on the right-hand side was of loose gravel, a couple of feet wide and sloped about 18 inches.''

The following questions and answers were read from the deposition of Mrs. Thomas as impeaching evidence of Wehnes testimony at the trial: Q. And how close were you to the right-hand side of the road, the east side of the road, when your car came to a stop? A. Do you mean to the edge of the macadam? Q. Yes. A. Couple of feet. Q. When you looked out you were riding on the right-hand side? A. Yes. Q. Do you mean a couple of feet from the running board? A. The wheel was about two feet from the edge though. Q. Were there any cars going by you, north, passing in the same direction you were going while he was there with you? A. I judge a half a dozen. Q. Was there any officer of the law who came there at the time? A. Yes. Q. Who was it? A. I could not say. Q. What occurred? A. They come back and looked at the tail-light and had me pull off the road, asked me if I could drive and I told them I could, and they told me to pull off. I said I could not for fear it would upset, and so five or six fellows got on one side and said they would hold it up and I should yell when ready, so I did. Q. How far did you pull it off? A. Twenty feet. Q. Why did you get out in the rear of the truck and stay there for 15 minutes? A. I was standing there smoking a cigarette. Q. Were any cars approaching? A. Yes. Q. Isn't it true that as these cars approached, you warned them of this truck being parked on the side? A. I stood back there and smoked. They all swung around and went by. Did not pay attention to me. Q. You were standing there warning them how far south of the truck? A. Seventy-five feet.

The question of the place of the truck on the highway at the time of the collision, as has been stated, was pertinent to the issues in the case, and its location was

not collateral matter or new matter brought out solely on cross-examination of· Wehnes. At the trial, the defendant produced testimony as to the location of the truck on the highway at the time in question. This the plaintiff. The testimony of Wehnes at the inquest testimony was in conflict with evidence introduced by was not substantive or primary evidence at the trial, but it was available for the impeachment of Wehnes. In other words, his testimony at the inquest, and introduced at the trial, was not primary evidence to establish the position of the truck on the highway.

The following questions and answers were also read from the deposition for the purpose of impeaching Wehnes. Q. What kind of car was it? A. Essex. Q. Coach? A. Yes. Q. How many in it? A. Three. Q. Where were they when you first saw them after the accident? A. Two in front and one in the rear. Q. Sitting in the car? A. Yes.

On his direct examination at the trial, Wehnes testified: "There was a rear view mirror located on the left side and extended out far enough so that you could see past the body of the truck. I sat there (in the cab of the truck) a few minutes and I heard a car coming down the road. I looked up at the mirror and saw this car coming down the road and what attracted my attention was the noise it made; that is what made me look back to see what it was, and I saw it was a car coming. It seemed to be coming at a high rate of speed and I watched the car through the mirror. . . . I found out later it was an Essex coach." Q. "What else did not notice, if anything, about the Essex car—the car you later found out to be the Essex—as it came up the road prior to the time of the crash?" A. "It only had one headlight, I noticed that." Wehnes did not testify at the inquest that the Essex car had only one headlight as it approached the stalled truck.

It is contended by the defendant that the questions and answers were inadmissible as impeaching evidence

because at the coroner's inquest Wehnes was not specifically interrogated as to the Essex car having one or two headlights at the time of the accident. The rule is that the omission of a witness to state a particular fact under circumstances rendering it incumbent upon him to, or likely that he would, state such fact, if true, may be shown to discredit his testimony as to such fact. 70 C. J. 1061; Greenleaf of Evidence (16th Ed.) Vol. 1, sec. 462a. Wehnes at the inquest, testified as in, his direct examination on the trial, but omitted to state that the Essex car had only one headlight. We think the impeaching testimony was proper.

It is also contended by the defendant that the court erred in admitting the photographs in evidence which this court held improperly admitted at the former trial. (280 Ill. App. 52.) At the second trial there was no testimony that the brick which appears on the highway in the pictures, marked the place where the truck stood on the highway according to the opinion of one of plaintiff's witnesses. The pictures were introduced in evidence with the statement of plaintiff's counsel and the admonition of the court, that the jury should disregard the location of any movable objects, which appear in the pictures. It is not contended that the pictures do not otherwise show the condition of the highway as it was at the time of the collision. The defendant introduced photographs taken by the same photographer who took the pictures introduced in evidence by the plaintiff. All the pictures were taken on the same day. The preliminary proof, as to the conditions not being changed on the highway during the time between the accident and the date (August 3, 1929) when the pictures were taken, is substantially the same. This evidence was competent and properly admitted.

It is also contended by the defendant that the verdict on the material issues as to whether the plaintiff was guilty of actionable negligence and the defendant free

of contributory negligence, is against the manifest weight of the evidence.

It is clear from the testimony of the witnesses, both for the plaintiff and the defendant, that the defendant left the truck standing on a traveled part of macadam, after the tire blew out. Whether or not it was left there, owing to an emergency, it was the duty of the defendant to display a light on the rear of the truck or to take other reasonable precautions to warn travelers on the highway of the presence of the truck. The gravamen, therefore, of the charge of negligence against the defendant is the lack of ordinary care exercised by him in that respect. Specifically, on the charge of actionable negligence, the contention between the parties is the question of whether the lamp on the rear of the truck was lighted at the time of the collision.

In our former opinion (280 Ill. App. 52) we stated some of the general facts as follows: "The evidence discloses that on the evening of July 31, 1929, appellant (defendant) accompanied by Ralph Wehnes was driving his Reo two-ton truck, which was loaded with tomatoes and sweet corn destined for the Chicago market, along Route No. 4. He had proceeded to within approximately a mile south of Joliet when the right rear tire on his truck blew out. There was a gap in the pavement extending several hundred feet and it was just about the time the truck left the concrete pavement and entered the macadam that he had his tire trouble. Appellant proceeded to stop his truck and when it came to a stop the right wheels thereof were near the edge of the macadam and the left wheels not far from the center thereof. The truck was jacked up and the tire and rim taken off and it was in that position when Gerald Staab, a brother-in-law of appellant, came along in another truck and a part of the load from appellant's truck was transferred to the truck being driven by Staab. An unsuccessful effort was made to

use a spare tire that Staab carried and thereafter appellant accompanied Staab in his truck, intending to stop at Joliet, buy a new tire and return. Wehnes was left with the truck and it was while appellant was gone that an Essex coach driven by Daniel Ferry and occupied by Gregory Carroll, the deceased, and John Sexton approached from the south and the Ferry car struck the left corner of appellant's truck. As a result of this collision, Carroll was thrown from the car and sustained injuries from which it is contended by appellee that he subsequently died.''

Before the collision occurred, two groups of persons had attended separate social affairs a few miles south of Joliet and they were returning to Joliet on Highway No. 4 at the time of the accident. One group had been at a supper in a summer cabin, while the other group had attended a dance. Those persons, five in number, who were at the supper were riding in three automobiles. The others who were at the dance, three young men with their girl friends, were riding in a car driven by one of the young men. Some of those persons who were at the supper were the first to arrive at the place of the accident and all of them arrived there very shortly after the collision. Those who arrived first were witnesses for the plaintiff and testified that the rear lamp on the truck was not lighted when they arrived where the collision occurred. Two of these witnesses for the plaintiff testified that they went to the rear of the truck and examined the lamp and that it was not lighted. The young men also arrived very shortly after the accident. They were witnesses for the defendant. All testified that the car they were in stopped back of the truck; that they saw the rear lamp on the truck lighted and it shone red. Other witnesses testified that no rear light was burning and others that it was.

The direct evidence as to whether the rear lamp was burning at the time of the accident, is in conflict. The

evidence as to whether the lamp was lighted after the accident is also in conflict. This evidence cannot be reconciled. We do not say or intimate that any of the witnesses were untruthful, yet the credibility of all and each one of the witnesses was a question which the jury had to decide. The conflict of evidence is subtantial on material facts in the case. There is sufficient evidence in the record introduced by the plaintiff to sustain the verdict. Under such conditions the rule is that the verdict of a jury will not be set aside unless it is manifestly against the weight of the evidence. *Belz v. Piepenbrink*, 318 Ill. 528; *Dowling v. MacLean Drug Co., Inc.*, 248 Ill. App. 270; *Leeper v. Gay*, 253 Ill. App. 176; *Rifkin & Hart, Inc. v. Buchsbaum & Co.*, 257 Ill. App. 473. The determination of the weight of the evidence in this case depends upon the credibility of the witnesses. The verdict of the jury shows that they accepted the theory of the plaintiff on the question of actionable negligence, and we would not be justified, considering the whole evidence, in saying that the jury was not warranted in reaching that conclusion and setting aside the verdict. *Green v. Ryan*, 242 Ill. App. 466; *Nell v. Nell*, 234 Ill. App. 164; *Hamman v. Illinois Cent. R. Co.*, 206 Ill. App. 80; *Saxton v. Drake*, 191 Ill. App. 322; *Floberg v. Floberg*, 358 Ill. 626.

It is also contended by the defendant that the plaintiff's intestate was guilty of contributory negligence because the Essex coach had only one headlight before and at the time of the accident and that the driver of the coach at the time of the accident was driving the car with the headlights (or headlight, as the case may be) not burning brightly, but dimmed. It is contended by defendant that the question of whether the decedent was guilty of contributory negligence involves the point as to whether the decedent was negligent, as a matter of law, in riding with the driver of the Essex coach for some time before the accident, with the headlights of the coach dimmed.

There is no way of solving the question as to whether the Essex car had one or two headlights, both before and at the time of the accident, except by the rule stated above, as applicable to conflicting evidence, namely, testing the credibility of the witnesses by the jury. Two witnesses testified that just before the accident the car had two headlights, and two witnesses testified that at that time the car did not have two headlights. Three witnesses testified that after the accident the coach had one headlight, and two witnesses testified that after the accident the coach had two headlights. There is testimony that after the accident one headlight of the coach was missing from the car and that the break on the bracket on the car, to which the missing headlight had been attached, was rusty. A photograph of the coach was introduced in evidence showing that it had one headlight. It seems clear without further comment or exposition that we may not hold that the verdict on this point is against the manifest weight of the evidence.

As stated, it is contended by the defendant that the decedent was guilty as a matter of law of contributory negligence in riding in the Essex coach before and at the time of the accident, because the car was, before and at the time of the accident, being driven with dim lights.

Ferry, the driver of the Essex car, testified that for some hours before, and at the time of the accident, he was driving the car with dimmers; that at the time of the collision he was driving the car at the speed of about 35 to 40 miles per hour; that he did not see the truck before the collision until he was about 20 feet from it; that he could see ahead with the lights dimmed, about 50 feet. Sexton, who was riding with Ferry, testified that the lights on the car threw a beam of light about 10 to 15 feet ahead of the car. The first witness to approach the stalled truck after the accident was driving a Ford car with bright headlights. She testi-

fied that she was looking straight ahead and when from 100 to 150 feet from the truck she saw a man in the middle of the road waving his arms, and "flagging me down." "I was driving on the east side of the highway. I swerved to the left to avoid hitting a truck which was parked on the highway, on the east side of the road. . . . I did not see the truck, at that time, before the man—there wasn't any lights." A witness who was driving his car toward the south and passed the truck before the accident, testified that he was just about even with the truck when he saw the Essex coach approaching from the south. He did not know how far south of the truck the coach was at that time, but he testified that he passed the coach on the pavement about 40 or 50 yards south of the truck. The collision occurred about 105 feet north of the end of the concrete pavement. He was driving his car about 20 miles an hour with the lights dimmed, after passing the truck. It is a reasonable inference that these two cars passed each other a few feet south of the end of the pavement and when they were from 120 to 150 feet from the truck. Ferry testified that immediately after he saw the truck he swung his car to the left, hitting the body at the windshield against the rear left-hand corner of the truck.

At the time of the collision there was in force section 16 of the Motor Vehicle Act, in part as follows: "When upon any public highway of this State, during the period from one hour after sunset to sunrise, every motor bicycle shall carry one lighted lamp and every motor vehicle two lighted lamps showing white lights, or lights of yellow or amber tint, visible at least two hundred (200) feet in the direction toward which each motor vehicle . . . is proceeding." Cahill's Ill. St. 1931, ch. 95a, ¶ 17. It has been held that this statutory provision is for the benefit not only of those who are using the highway ahead of the motor vehicle, but also to enable those driving the car to avoid accidents.

o

*Miller v. Burch,* 254 Ill. App. 387; *Price v. Illinois Bell Telephone Co.,* 269 Ill. App. 581. It has not been held that proof of the fact that the lights of a car were not sufficiently bright to disclose objects in front of the car for a distance of 200 feet is alone sufficient as a matter of law to prove negligence on the part of the driver of the car, in the event of the car colliding with an unlighted motor vehicle on the highway. Such proof is prima facie evidence of negligence. (*Miller v. Burch, supra; Price v. Illinois Bell Telephone Co., supra.*) However, the question of whether the driver of the car, before and at the time and place of the collision, was negligent, depends on all the facts and circumstances shown by the evidence. (*Miller v. Burch, supra; Price v. Illinois Bell Telephone Co., supra.*) Such as: 1. Whether plaintiff should have apprehended the danger. 2. Whether the place where plaintiff was driving, and had a right to drive, was a safe place to drive with dim lights. 3. In short, whether under all the conditions and circumstances surrounding plaintiff as he proceeded along the highway, his conduct was so violative of all rational standards of conduct applicable to persons in like situations that all reasonable minds would conclude that he was negligent. If it was not, then, although he may have been negligent as a matter of fact, he could not properly be said to be negligent as a matter of law. Hence the jury was properly permitted to pass on that question of fact, and if the jury had a basis in the evidence for finding that the conduct of the plaintiff did not constitute negligence then, in such case, no one would contend there could be such a thing as negligent contribution to the cause of the injury, negligence of the plaintiff having been eliminated. On the other hand, should the jury find the conduct of plaintiff did amount to negligence, it would still have to find whether that negligence proximately contributed to the collision which caused the damages.

It is not contended that the negligence of Ferry, if any, before and at the time of the accident is imputable to the decedent. It is clear, however, that the question of whether Ferry was negligent in driving a car with dim lights before and at the time of the accident, is a question of fact and not one of law, under the facts and circumstances appearing in the evidence. We are asked to hold that the decedent, as a matter of law, was guilty of contributory negligence under the facts and circumstances appearing in evidence for the reason solely that the decedent was riding in the car with its lights dimmed. Such ruling would require of a guest riding in an automobile a greater degree of care than that required by the driver of the car. We are of the opinion that under the facts and circumstances appearing in the evidence in this case that the trial court did not err in refusing a new trial on the ground that the decedent was guilty of contributory negligence before and at the time of the accident. *Price v. Illinois Bell Telephone Co., supra; Rhoden v. Peoria Creamery Co.,* 278 Ill. App. 452; *Smith v. Courtney,* 281 Ill. App. 530.

It is contended by the defendant that the court erred in giving plaintiff's Instruction No. 10. This instruction informed the jury that the declaration consists of four counts and that it was not necessary for a recovery on the part of the plaintiff that she prove all of said counts, but that if she proved one or more of them by a preponderance of the evidence, then the jury should find for the plaintiff. The purpose of the instruction, as is plain from its terms, was to instruct the jury that the plaintiff did not have to prove all the charges of negligence contained in the separate counts of the declaration in order to recover damages of the defendant, but that proof of one of the charges was sufficient. This instruction sets forth the allegations of the counts and states that the declaration contains the allegation: "While said Gregory Carroll was in

the exercise of ordinary care for his own safety." It is complained that the instruction is defective in this case because it does not state that in order to recover the plaintiff must prove that the decedent was in the exercise of ordinary care for his own safety before and at the time of the accident. In several subsequent instructions given to the jury, both by the plaintiff and the defendant, it was clearly stated that before the plaintiff could recover it was necessary for the plaintiff to prove that the decedent before and at the time of the accident was in the exercise of ordinary care for his own safety, in view of all the facts and circumstances shown by the proof. Considering the instructions as a series we do not think the giving of this instruction was reversible error.

It is also contended by the defendant that the court erred by refusing to give Instruction No. 13 offered by the defendant. This instruction provides, among other things, that if the decedent at the time of the accident was riding in an automobile driven by Ferry in "a careless, negligent, and improper manner" and had been riding in the automobile for a sufficient time prior to the accident, in the exercise of ordinary prudence. to become aware that the automobile was being driven in such "a careless, negligent, and improper manner," and that decedent failed to protest or warn the driver against the manner in which he was driving the automobile, and that such failure of decedent caused or proximately contributed to the cause of the accident, the jury should find for the defendant. Where the court directs a particular verdict, if the jury find certain facts, the instruction must embrace all the facts and conditions essential to such verdict. *Illinois Iron & Metal Co. v. Webber*, 196 Ill. 526. The words of the instruction that if the car was being driven "in a careless, negligent and improper manner," failed to inform the jury that such driving of the car must have been

of such a character that a reasonably prudent person in the same or similar circumstances would have warned the driver against the manner he was driving the car. The instruction also failed to inform the jury that decedent in the exercise of ordinary care failed to warn the driver against the manner in which the car was being driven. (*Roedler v. Vandalia Bus Lines, Inc.*, 281 Ill. App. 520.) It is also noted that the case was tried on the theory that the decedent was guilty of contributory negligence riding in the Essex coach before and at the time of the accident, when the headlights of the car were dimmed. On this theory the jury was instructed by Instructions Nos. 19 and 24, offered by the defendant, and the substantial parts of refused Instruction No. 13 were covered by these two instructions.

It is contended by the defendant that the counsel for the plaintiff was guilty of misconduct during the examinations of witnesses and also in his argument before the jury, which was of such a character as to be prejudicial to the rights of the defendant for a fair trial and constituting ground for reversal of the judgment. The alleged misconduct during the examinations of witnesses concerned the admission of evidence, and we do not observe that counsel for plaintiff exceeded his rights to insist upon the admission of evidence which he thought was competent under his conception of the law. The alleged misconduct during his argument by counsel for the plaintiff was relative to whether a certain line of argument of plaintiff's counsel was supported by the evidence. There had been a dispute between counsel on this point. The jury was instructed that statements of counsel in these arguments were not to be considered as evidence, but that their verdict as to the evidence in the case should be governed solely by the testimony.

We have carefully considered the objections to the alleged misconduct of counsel as presented by the record, and it does not appear therefrom that the defendant was prejudiced by the conduct of plaintiff's counsel.

Finding no reversible error in the case, the judgment of the circuit court of Peoria county is hereby affirmed.

*Judgment affirmed.*